Simonton, District Judge.
These are claims by material men, proved and allowed in this court. -The petitioners prayed an order for payment out of funds in the hands of the receiver; failing these, that provision be made for them out of the proceeds of the sale of the road, when such sale be ordered. The cases were heard and considered. The opinion of the court can be found in 48 Fed. Rep. 188. The court held that the petitioners had established their equity. A reference was ordered to ascertain whether the Charleston, Cincinnati & Chicago Railroad over earned any income. Was any portion of it applied to the payment of interest or to any permanent improvement of the property, or in any way for the benefit of the bondholders? How much? The master has made his report, which shows that there was no payment of interest by the road, but that the sum of $2,300 was taken from cash in the hands of Receiver Lord, derived from earnings, and applied to the construction of the road at and neaf Marion, N. C. Mr. Lord, temporary receiver, turned over to Mr. Chamberlain, his successor, permanent receiver, $4,000, derived from earnings. Shortly after his appointment, Mr. Chamberlain filed a petition for leave to issue receiver’s certificates to meet certain pressing claims. Mr. Lord had had leave to issue such certificates, but had not used the privilege. In his petition, Mr, Chamberlain sets out the claims to be paid, aggregating $48,854.81. He estimates that with $30,000 in certificates and his earnings he can get along comfortably, and he obtained leave to issue the $30,000 in certificates. The expenditure for the road to Marion is not in his list of claims to be paid. These were:
For taxes, $12,605 90
Freight balances, 19,136 33
Cross-ties, 7,567 47
Pay rolls, 9,593 33
$48,901 93
The larger part of these were due before any receiver was appointed. Neither under Mr. Lord nor under Mr. Chamberlain has the railroad company been able to earn its running expenses, and keep down the payment of taxes. It thus appears that when Mr. Lord used $2,300 in building the Marion connection ho borrowed that sum from moneys urgently needed for pressing demands, and that these demands were met by the issue of receiver’s certificates, displacing the lien of the bondholders to the extent of $30,000. The underlying principle of Fosdick v. Schall, 99 U. S. 235, and the cases following it is this: The earnings of the railroad must first be applied to meet the outlays necessary to *526 keep it a going concern. After this application only can the bondholders lay any claim to them. If earnings have been diverted from this primary purpose, and used for the advantage of the bondholders, either in payment of interest or in permanent improvements which tend to enhance the value of the property, the sums thus diverted must be restored. This restoration may be from the income. If this fail, then the diversion must be met out of the proceeds of sale. There was in this case a diversion of some $2,300. This the bondholders must restore. They have, in fact, restored it by consenting to the displacement of their lien by the issue of receiver’s certificates to the. amount of $30.-000. These must be paid out of the proceeds of sale. The money thejr furnish has been applied to claims of the same rank as those held by the petitioners, and this exonérales the bondholders from any further assessment. It thus appears that the petitioners have no equity which can displace the vested lien of the bondholders. The prayer for preference from the proceeds of sale is refused.