FINANCE CO. OF PENNSYLVANIA et al. v. CHARLESTON, C. & C. R. CO. et al.

BOSTON SAFE DEPOSIT & TRUST CO. v. RICHMOND & D. R. CO.

(Circuit Court of Appeals, Fourth Circuit. May 22, 1894.)

No. 58.

**1. RAILROAD COMPANIES—MORTGAGE FORECLOSURE—APPLICATION OF PROCEEDS OF SALE.**

The order appointing a receiver of a railroad in a foreclosure suit authorized him to pay balances due to other carriers; and leave was afterwards granted him, without objection, to issue certificates to meet such obligations. Interveners filed a claim for such balances accruing before the receiver's appointment, praying payment out of earnings, and general relief; but no proceedings were had thereon until after sale of the road on fore-

closure. The receiver's earnings had been absorbed by running expenses, and there had been no diversion of income to pay interest. *Held*, that an application of the interveners for payment out of the proceeds of sale was properly granted.

2. SAME—COLLATERAL SECURITY FOR CLAIM.

As against an account for freight and balances of freight exchange between two railroad companies, the creditor company held the debtor's note, secured by its mortgage bonds, on an agreement that the note was "to be payment when paid." *Held*, that this was not a waiver of a right to claim payment from proceeds of the sale, on foreclosure, of the debtor company's railroad.

Appeal from the Circuit Court of the United States for the District of South Carolina.

The facts, as sufficiently stated by counsel, are these: On December 10, 1890, the Finance Company of Pennsylvania and others, complainants, filed their bill in the circuit court of the United States for the District of South Carolina, against the Charleston, Cincinnati & Chicago Railroad Company, the Boston Safe Deposit & Trust Company, and others, alleging: The incorporation of the railroad company, for the purpose of constructing and operating a railroad from Charleston, S. C., to Ashland, Ky., a distance of 620 miles; the execution and delivery to the Boston Safe & Deposit Company, on August 9, 1887, of a mortgage upon said railroad, to secure an issue of bonds to the amount of $15,500,000, which were delivered to said Boston Company; a contract for construction of the railroad, with a construction company, the partial performance of this contract, and the delivery to the construction company of over $7,000,000 of these bonds, and the purchase by complainants from said company of a portion of said bonds; the completion and operation of a part of the railroad; the insolvency of the construction company, and its inability to complete its contract; the insolvency of the railroad company; its inability to complete the road or to operate the completed portion; want of rolling stock; suits pending; no credit with which to purchase fuel, oil, waste, and other necessary supplies; nonpayment of employes for several months. Complainants therefore prayed the appointment of a receiver.

The railroad company and the construction company answered, joining in the prayer; the deposit company admitted the first three paragraphs of the bill, and required proof of the remainder.

On December 10, 1890, Samuel Lord was appointed temporary receiver, but the order made no provision for payment of any balances to connecting lines, or for the payment of any ante-receivership indebtedness. On February 26, 1891, D. H. Chamberlain was appointed permanent receiver, by an order of said court, "with all the authority and duties prescribed in the order hereinbefore made, naming Samuel Lord, Esq., temporary receiver," which order contained the following provision: "That said receiver be further authorized to pay all the wages due to the employés, at the date of the order appointing the temporary receiver herein, for labor and services within ninety days before the same, and also all balances due to other carriers and connecting lines, and necessary to be paid for the conducting of the said railroad." On March 16, 1891, Chamberlain, the receiver, filed his petition asking to be allowed to issue $30,000 of certificates to pay certain obligations found due and unpaid upon entering upon his duties as permanent receiver, aggregating $48,901.93. These consisted of taxes, freight balances due on December 10, 1890, freight balances and freight due since that date, and amounts for crossties, coal, and other supplies. With the cash on hand, and estimated receipts for some days in March, and the proceeds of these certificates, the receiver stated in his petition he would be able to pay off all said indebtedness, except $5,247.12. This he proposed to pay along with the future current expenses, out of the future current earnings. Leave was granted to issue said certificates, March 17, 1891.

On August 4, 1891, the Richmond & Danville Railroad Company filed its intervening petition, setting out its account against the railroad company in full, accruing both before the appointment of the temporary receiver and subsequently, and praying that it be paid out of the earnings of the road, and for·

general relief. This was referred the same day to a special master, to take testimony and report, but no proceedings were had under this order until after the sale of the road, when, on July 11, 1893, the reference was proceeded with. The account consisted of four classes of items: (1) Amount due on account of claims, $75.44; (2) amount due on Blacksburg Crossing, $1,057.65; (3) amount due on freight, $5,422.94; (4) amount due on freight balances, $8,095.58.

It appeared, in the testimony returned by the master, that the Richmond & Danville Company held, as against the account in question, a note of the Charleston, Cincinnati & Chicago Company for $10,000, secured by certain first mortgage bonds of that company, the note "to be payment when paid," and counsel for the deposit company, trustee, claimed that, upon the settlement of the account, the trustee was entitled to the return of the collateral bonds, or to an accounting for their value.

It was admitted that the Charleston, Cincinnati & Chicago Company was run at a loss, both before and since the appointment of a receiver, and that the earnings of the receiver had been more than absorbed by running expenses; also, that there had been no diversion of income to payment of interest.

The master having made his report, the application of the interveners to be paid out of the proceeds of sale came on to be heard in the circuit court, before Simonton, J. The court allowed the first item, which was admitted; disallowed the second item; allowed the third and fourth items,—and rendered a decree August 24, 1893, for the sum of $13,421.95 (made up of the three items allowed, with a deduction of credits amounting to $172.01), with interest from December 11, 1890. From this decree, the Boston Safe & Deposit Company prayed an appeal to this court, and assigned errors as follows:

1. That the court erred in ordering the sum of $5,422.94, made up of items of freight charges of the Richmond & Danville Railroad Company against the Charleston, Cincinnati & Chicago Railroad Company for cars and other articles of freight carried by the former company for the last-named company, and delivered to it as consignee and owner, to be paid out of the proceeds of sale.

2. That the court erred in ordering the freight balance of $4,376.19, due by the Charleston, Cincinnati & Chicago Railroad Company to the Richmond & Danville Railroad Company, to be paid out of the proceeds of sale.

Samuel Lord, for appellants.

T. P. Cothran, for appellees.

Before Mr. Chief Justice FULLER, GOFF, Circuit Judge, and JACKSON, District Judge.

Mr. Chief Justice FULLER (after stating the facts as above). It was conceded, on the argument, that the item mentioned in the second assignment of error related to a balance due by the receiver of the Charleston, Cincinnati & Chicago Railroad Company to the Richmond & Danville Railroad Company, which had accrued subsequent to his appointment, and which, as a matter of fact, had been paid, and we assume that the intention of counsel was to question the allowance of the fourth item for $8,095.58, and it will be so regarded. The two items complained of were for freight on shipments of coal, cars, oil, etc., consigned to the Charleston, Cincinnati & Chicago Railroad Company for its own use, and which were turned over by the agent of the Danville road to the agent of the former road at Blacksburg, the Danville road being charged with all back charges, and paying them; and for balances of freight exchange found to be due by the Charleston, Cincinnati & Chicago Company to the Danville Company. The order of February 26, appointing the permanent receiver, expressly authorized him "to pay all the

wages due to employes, at the date of the order appointing the temporary receiver herein, for labor and services within ninety days before the same, and also all balances due to other carriers and connecting lines and necessary to be paid for the conducting of said railroad." This was such an order as is frequently made in these cases, and cannot properly be construed as limited to payment out of current earnings, especially in view of the condition of the road. The liabilities which made up the two disputed items accrued prior to December 11, 1890, and the bill was filed, and the temporary receiver appointed, on December 10. On March 16, 1891, the permanent receiver was granted leave to issue $30,000 of certificates, with which to meet obligations, which included freight, balances for freight, cross-ties, coal, and other supplies, which certificates were necessarily a charge upon the corpus of the estate. It does not appear that appellant raised any objection to either of these orders, although, if it considered them objectionable or injurious to its interests, it might well have applied to the court to cancel or modify them. U. S. Trust Co. v. Wabash W. Ry. Co., 150 U. S. 287, 303, 14 Sup. Ct. 86; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140.

It must be regarded as settled that a court of equity may make it a condition of the issue of an order for the appointment of a receiver of a railroad company that certain outstanding debts of the company shall be paid from the income that may be collected by the receiver, or from the proceeds of sale; that preferential payments may be directed of unpaid debts for operating expenses, accrued within 90 days, and of limited amounts due to other and connecting lines of road for materials and repairs and for unpaid ticket and freight balances, in view of the interests both of the property and of the public, that the property may be preserved and disposed of as a going concern, and the company's public duties discharged; and that such indebtedness may be given priority, notwithstanding there may have been no diversion of income, or that the order for payment was not made at the time, and as a condition, of the receiver's appointment, the necessity and propriety of making it depending upon the facts and circumstances of the particular case, and the character of the claims. Miltenberger v. Railroad Co., 106 U. S. 286, 311, 1 Sup. Ct. 140; Trust Co. v. Souther, 107 U. S. 591, 594, 2 Sup. Ct. 295; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; Morgan's L. & T. Railroad & Steamship Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61; Kneeland v. Foundry Works, 140 U. S. 592, 11 Sup. Ct. 857. Of course, the discretion to enter such orders should be exercised with great care, but as late as Thomas v. Car Co., 149 U. S. 95, 110, 13 Sup. Ct. 824, the supreme court quoted the remarks upon the doctrine and its proper application in Miltenberger v. Railroad Co., supra, with approval, although, as observed by this court in Bound v. Railway Co., 58 Fed. 473, 7 C. C. A. 322, the tendency of that case was to narrow the limits within which an equity court should confine itself in making such allowances.

We are of opinion that the order of February 26, 1891, was providently entered, and that the circuit court did not err in its decree.

The petition was sufficient, and the relief awarded, being consistent with the case made, was grantable under the prayer for general relief. The allowance of interest from the date of the appointment of the temporary receiver was, perhaps, open to question, but no error is assigned in regard to it, and, under the circumstances, we do not feel called upon to disturb the decree on that account.

Something was said upon the argument in respect of the note and bonds of the Charleston, Cincinnati & Chicago Company, taken and held by the Danville Company, but that was as collateral to the original obligation, and the express agreement was that the note was to be considered as payment only "when paid." This was no waiver of the right to come upon the fund, and, when the amount of the decree is paid, whatever rights in that collateral appellant may be entitled to, by way of subrogation or otherwise, can be adjusted and determined.

Decree affirmed.