**WOOD v. NEW YORK & N. E. R. CO. et al. (CARNEGIE STEEL CO., Limited, Intervener).**

**HART et al. v. SAME.**

(Circuit Court, D. Massachusetts. December 3, 1895.)

1. RAILROAD FORECLOSURE — RECEIVERS — PAYMENT OF UNSECURED DEBTS — RULES.

There is no fixed and inflexible rule in respect to the allowance, out of the earnings of a railroad in the hands of a receiver, of unsecured claims for current debts, but each case is largely governed by its own circumstances. Such allowance does not depend on any fixed rule as to the time when the debts were contracted, nor upon the order appointing receivers. Where there has been a diversion of current income from the payment of current debts to the payment of interest on a mortgage, or the making of permanent improvements, there should be a restoration, to the extent of such diversion; and, independently of diversion, debts may be preferred which are incurred for labor and supplies necessary to keep the road a going concern, or which grow out of indispensable business relations.

2. SAME—COUPLING LINKS AND PINS.

A claim for coupling links and pins and tank steel necessary to the operation of a railroad from day to day, and furnished to it within four months before the appointment of receivers of the road in a suit by first mortgage bondholders, and within a year before the extension of the receivership to a suit by the trustees of a second mortgage, may properly be ordered to be paid by the receivers out of the earnings of the road in their hands.

This was a suit by Theodore F. Wood against the New York & New England Railroad Company and others, with which was consolidated

a suit by William T. Hart and others, against the New York & New England Railroad Company for the foreclosure of a mortgage. Receivers of the road were appointed. The Carnegie Steel Company, Limited, filed an intervening petition asking payment by the receivers of a claim for supplies. The receivers and the trustees of the mortgage demurred to the petition.

Strout & Coolidge and Geo. S. Selfridge, for receivers.

Alfred Hemenway and William D. Turner, for petitioners.

Simpson, Thatcher & Barnum and Ropes, Gray & Loring, for Hart and others.

COLT, Circuit Judge. This is an intervening petition brought by the Carnegie Steel Company, Limited, praying that the receivers of the New York & New England Railroad Company be directed to pay out of the receipts derived from the operation of said railroad a certain claim, amounting to $3,751.86, for material and supplies furnished from September 22, 1893, to December 8, 1893. The articles furnished were coupling links and pins and tank steel. The petition alleges that these supplies were necessary to the operation of the railroad from day to day; that payment of said amount had been approved, and would have been paid but for the filing of a bill of complaint on December 29, 1893, by Theodore F. Wood, on behalf of himself and all other holders of the first mortgage bonds and of the common stock of said railroad who might join therein, praying for the appointment of a receiver; that a decree was entered appointing a temporary receiver, and that on January 23, 1894, permanent receivers were appointed; that "by said decree the receivers were authorized to pay debts for supplies of the kind furnished by your petitioner out of the operating receipts," and that in pursuance thereof many debts for supplies were paid, but that before payment of the petitioner's account another bill of complaint was filed September 8, 1894, by William T. Hart and others, trustees under the second mortgage, praying for the appointment of a receiver and an order of foreclosure; that under said last bill the same receivers were appointed and the cause consolidated with the Wood suit, and a decree was entered that the receivers thereafter should pay no debts or accounts due from said railroad without the special order of the court, except such expenses as were necessarily incurred in operating and protecting the mortgaged property. The decree in the Wood suit provided substantially as follows: The receivers were ordered to continue the operations of the railroad, and out of the operating receipts to pay wages, taxes, royalties, rents, traffic balances due and to become due, debts for supplies, and interest due on securities charged on the property. The receivers were also authorized, in their discretion, from time to time, out of the funds coming into their hands, to pay the expenses of operating the said property, and all taxes and assessments, and the current and unpaid pay rolls and supply accounts incurred in the operation of the road at any time within four months prior to the receivership. The decree in the Hart foreclosure suit provided that the trustees were entitled to take possession of the mortgaged property, and

extended the receivership in the Wood suit for the purposes of the foreclosure suit. It further provided that the receivers should make no payments and incur no obligations without special order of the court, except for operating expenses incurred by them.

The present hearing was had on demurrers to the petition filed by the receivers and the trustees in the foreclosure suit. The question presented is whether the petitioner's claim is entitled to a preference over mortgage liens, and should be paid out of current earnings or receipts in the hands of the receivers.

In respect to the payment by receivers of a railroad of pre-existing current debts, as constituting a preference over outstanding mortgage liens, out of current income coming into their hands, or even out of the proceeds of the sale of the property under foreclosure, it may be observed—First, that no fixed and inflexible rule can be laid down, but that each case is to be largely governed by its own special circumstances; second, that the tendency of judicial decision is to narrow, rather than enlarge, the class of such preferred claims; third, that the allowance of such claims does not depend upon any fixed or arbitrary rule as to the time when the debts were contracted, further than that they must have been incurred within a reasonable time before the appointment of receivers, such reasonable time depending upon the circumstances of each particular case; fourth, that the allowance of such claims does not depend upon the order of court appointing receivers; fifth, that the current income of a railroad is primarily to be devoted to the payment of current debts, and that where such income has been used for the payment of interest upon mortgage indebtedness or for permanent improvements, or in any manner has been diverted for the benefit of the mortgagees at the expense of the current debt fund, there must be a restoration, to the extent of such diversion; sixth, that, independently of the question of diversion, debts may be preferred which are incurred for labor and supplies necessary to keep the road a going concern from day to day, or which are the outcome of indispensable business relations, a continuance of which involves the interests of the public and the traffic of the road. Fosdick v. Schall, 99 U. S. 235; Hale v. Frost, Id. 389; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 8 Sup. Ct. 1011; Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824; Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473; Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 52 Fed. 524; Id., 10 C. C. A. 323, 62 Fed. 205. In the leading case of Fosdick v. Schall, supra (pages 251-254), Mr. Chief Justice Waite, speaking for the court, said:

"We have no doubt that, when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference

to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property as may, under the circumstances of the particular case, appear to be reasonable. * * * The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income. If, for the convenience of the moment, something is taken from what may not improperly be called the 'current debt fund,' and put into that which belongs to the mortgage creditors, it certainly is not inequitable for the court, when asked by the mortgagees to take possession of the future income and hold it for their benefit, to require, as a condition of such an order, that what is due from the earnings to the current debt shall be paid by the court from the future current receipts before anything derived from that source goes to the mortgagees. * * * The appointment of a receiver is not a matter of strict right. Such an application always calls for the exercise of judicial discretion, and the chancellor should so mold his order that, while favoring one, injustice is not done to another. * * * We think, also, that if no such order is made when the receiver is appointed, and it appears in the progress of the cause that bonded interest has been paid, additional equipment provided, or lasting and valuable improvements made out of earnings which ought in equity to have been employed to keep down debts for labor, supplies, and the like, it is within the power of the court to use the income of the receivership to discharge obligations which, but for the diversion of funds, would have been paid in the ordinary course of business. * * * Thus it often happens that, in the course of the administration of the cause, the court is called upon to take income which would otherwise be applied to the payment of old debts for current expenses, and use it to make permanent improvements on the fixed property, or to buy additional equipment. In this way the value of the mortgaged property is not infrequently materially increased. It is not to be supposed that any such use of the income will be directed by the court without giving the parties in interest an opportunity to be heard against it. Generally, as we know both from observation and experience, all such orders are made at the request of the parties, or with their consent. Under such circumstances, it is easy to see that there may sometimes be a propriety in paying back to the income from the proceeds of the sale what is thus again diverted from the current debt fund in order to increase the value of the property sold. The same may sometimes be true in respect to expenditures before the receivership. No fixed and inflexible rule can be laid down for the government of the courts in all cases. Each case will necessarily have its own peculiarities, which must, to a greater or less extent, influence the chancellor when he comes to act. The power rests upon the fact that, in the administration of the affairs of the company, the mortgage creditors have got possession of that which in equity belonged to the whole or a part of the general creditors. Whatever is done, therefore, must be with a view to a restoration by the mortgage creditors of that which they have thus inequitably obtained. It follows that, if there has been in reality no diversion, there can be no restoration, and that the amount of restoration should be made to depend upon the amount of the diversion."

In Miltenberger v. Railway Co., supra (page 311, 106 U. S., page 140, 1 Sup. Ct.), the court, by Mr. Justice Blatchford, said:

"Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, or even the corpus of the property, under the order of the court, with a priority of lien. Yet the discretion to do so should be exercised with very great care. The payment of such debts stands prima facie on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unpaid debts for operating ex-

penses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interests both of the property and of the public, and the payment of limited amounts due to other and connecting lines of road for materials and repairs and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result, in case of nonpayment, the general consequence involving largely, also, the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good will and integrity of the enterprise, and entitle them to be made a first lien."

In Kneeland v. Trust Co., supra (page 97, 136 U. S., page 950, 10 Sup. Ct.), Mr. Justice Brewer, delivering the opinion of the court, said:

"The appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because, in a few specified and limited cases, this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens ,sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which by the rulings of this court have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it. and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

In Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 10 C. C. A. 323, 62 Fed. 205, 208, Mr. Chief Justice Fuller said:

"It must be regarded as settled that a court of equity may make it a condition of the issue of an order for the appointment of a receiver of a railroad company ,that certain outstanding debts of the company shall be paid from the income that may be collected by the receiver, or from the proceeds of sale; that preferential payments may be directed of unpaid debts for operating expenses accrued within 90 days, and of limited amounts due to other and connecting lines of road for materials and repairs and for unpaid ticket and freight balances, in view of the interests both of the property and of the public, that the property may be preserved and disposed of as a going concern, and the company's public duties discharged; and that such indebtedness may be given priority, notwithstanding there may have been no diversion of income, or that the order for payment was not made at the time, and as a condition, of the receiver's appointment, the necessity and propriety of making it depending upon the facts and circumstances of the particular case, and the character of the claims."

In support of these propositions the court cites Miltenberger v. Railway Co. and Trust Co. v. Souther, and other cases.

In Thomas v. Car Co., supra (page 112, 149 U. S., page 824, 13 Sup. Ct.), Mr. Justice Shiras, speaking for the court, observed:

"The case of a corporation for the manufacture and sale of cars, dealing with a railroad company whose road is subject to a mortgage securing outstanding bonds, is very different from that of workmen and employés, or those who furnish from day to day supplies necessary for the maintenance of the railroad."

There is no allegation in this petition of a diversion of current income for the benefit of the mortgagees, and therefore this claim, as now presented, does not come within the principle of diversion laid down in Fosdick v. Schall, supra; Burnham v. Bowen, supra; and St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., supra. It does appear, however, that the materials purchased were coupling links and pins and tank steel, furnished from time to time between September 22, and December 8, 1893; and the petition alleges "that said supplies were necessary to the operation, from day to day, of said railroad." I am of opinion that the petition states a case which brings this claim within that limited class of debts incurred for labor and supplies necessary to keep the road a going concern from day to day, and that it should be held to possess a superior equity over mortgage liens, upon the principle recognized in Miltenberger v. Railway Co., supra; Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., supra; Bound v. Railway Co., supra; Thomas v. Car Co., supra; Hale v. Frost, supra.

As to the objection that these supplies were not furnished during the period of time within which alone a priority can be given, it may be said that there is no fixed rule as to time, further than is expressed by the words "reasonable time." In some cases, by order of court, the time has been limited to three months; in other cases, to six months; and in Burnham v. Bowen, supra, it appears that the coal was furnished some time during the year previous to the receivership. See, also, Hale v. Frost, supra. These materials were furnished within four months of the time of the appointment of receivers in the Wood suit, and within a year of the time of the appointment of the same receivers in the Hart suit. The decree in the Wood suit provided that in their discretion the receivers might pay pre-existing supply accounts contracted within a period of four months, and the decree in the Hart suit merely declared that no payment of this kind should be made without a special order of court, and upon reasonable notice. Under these circumstances, I do not think the petitioner's claim is barred, as not coming within the time within which priority can be given. Demurrers overruled.