ATLANTIC TRUST CO. v. WOODBRIDGE CANAL & IRRIGATION CO.

(Circuit Court, N. D. California. January 4, 1897.)

1. IRRIGATION COMPANIES — MORTGAGE FORECLOSURES — RECEIVERS—PREFERENTIAL CLAIMS.

The equitable rules giving priority to labor and supply claims arising within a limited time before the appointment of a railroad receiver in foreclosure proceedings are applicable by analogy to irrigation companies, which are also quasi public corporations, subserving great public uses.

2. SAME.

Where a receiver is appointed in foreclosure proceedings against an irrigation company, claims for labor performed in the construction of ditches, etc., are not entitled to preference over the mortgage debt. Claims for labor expended in repairs and improvements are entitled to preference only when there has been a diversion of income to payment of interest, or otherwise to the benefit of the security. But debts for labor and supplies necessary to keep the works a going concern will be given a preference, even out of the corpus of the property, though there has been no diversion of income.

J. J. Scrivner and John B. Hall, for complainant.
Daniel Titus, for defendant.
Wm. M. Cannon and Paul C. Morf, for petitioners for preference.

McKENNA, Circuit Judge. This is a suit to foreclose a mortgage, in which a receiver was appointed. Demurrer of complainant to petition of William Alloway, claiming preference as a laborer. The allegation of the petition is:

"That said defendant, the Woodbridge Canal & Irrigation Company, on the 1st day of October, 1894, was, and is now, indebted to your petitioner in the sum of $278, for work and labor done and bestowed between the 1st day of April, 1894, and the 1st day of October, 1894, by said petitioner for said above-named defendant, in the construction, alteration, addition to, repair, and supervision of its said ditches and canals, as a laborer, and at its request."

It is further alleged, in substance, that such sum was one of the necessary current expenses incurred by said defendant in preserving, operating, repairing, constructing, and extending the ditches, canals, and branches of defendant's works, and was essential to their conservation.

The question is, is the sum due a preferential debt? What is or is not a preferential debt, as against mortgaged railroad property, if a receiver be appointed, has received consideration in a number of cases, and certain propositions have become established. The primary principle is that the mortgage lien is paramount to subsequent charges, and, if displaced at all, it must be by a clearly superior equity. The equity, whatever its extent, is applied as part of the court's discretion of taking the control and administration of the property by a receiver. It may be a condition of appointment, or exercised afterwards. It may be applied to income or corpus, under particular circumstances. These propositions are not disputed. I mention them now to limit the inquiry to what is disputed, without the necessity of noticing the language of some of the cases which seem to make them important distinctions. It would seem from the cases that the equity depends partly upon the principle that current income, though in terms covered by the mortgage lien, is the prop-

erty of the mortgagor until possession be taken by the mortgagee, and hence it may be applied to current debts, and partly upon the principle of estoppel, arising from the delay of the mortgagee after default of the mortgagor. It is not necessary to review the cases. This has been done so often by able judges that to do so again would be as affected as useless. An able summary of their general doctrine was made by Mr. Justice Harlan in Thomas v. Railway Co., 36 Fed. 808. The exact point in the case at bar, however, is not explicit in that summary, nor an indisputable inference from it, nor from the decisions of the supreme court. At any rate, since that time Judges Caldwell and Jenkins, in well-considered opinions, have expressed opposite views, and a reconciliation of them seems impossible. None, at least, was apparent to Judge Jenkins, for he definitely disapproved of those Judge Caldwell entertained. Judge Jenkins says that the principle which underlies the allowance of preferential claims in the case of railroad foreclosures is "bottomed upon the idea of diversion of funds in equity belonging to the general creditors, in preference to bondholders." Judge Caldwell extends the principle, and includes in the claim of preference "those which have aided to conserve the property, and have been contracted within some reasonable time"; and an essential antagonism seems to be expressed between his view and that of Judge Jenkins by the following passage: "And it is an error to suppose that such debts can only be given priority where there has been a diversion of the income of the road. * * *" See Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182; Same v. Northern Pac. R. Co., 68 Fed. 36. In Trust Co. v. Riley, 16 C. C. A. 610, 70 Fed. 32, decided by the circuit court of appeals for the Eighth circuit, a distinction is made which brings us nearer to the case at bar. Sanborn, circuit judge, delivered the opinion of the court. After stating the general principle by a quotation from Fosdick v. Schall, 99 U. S. 235, he described the kind of claim passed upon in all the subsequent cases, down to and including Thomas v. Car Co., 149 U. S. 110, 13 Sup. Ct. 824, and said:

"From this brief review of the decisions of the supreme court bearing upon this question, we think these propositions may properly be deduced: First. There are certain claims against a mortgaged railroad company, accruing before the appointment of a receiver, which are entitled to a preference over a prior mortgage debt in payment out of the earnings of the railroad during the receivership, and out of the proceeds of the sale of its property. Second. It is an indispensable element of every such claim that it is founded upon property furnished or services rendered to the mortgagor, which either preserved or enhanced the value of the security of the mortgage debt, and thereby inured to the benefit of the mortgagee. Third. Claims of this character have been given a preference over the mortgage debt by these decisions on one of two grounds,—either on the ground that the mortgage is a lien on the net, and not on the gross, income of the railway company; and where that part of the income that is applicable to the payment of current expenses of operation, proper equipment, and necessary improvements has been diverted to pay interest on the mortgage debt, or to otherwise benefit the security, and this diversion has left claims for these expenses unpaid, it is the province and duty of the chancellor to restore the diverted fund by taking an equal amount from the earnings of the railway company during the receivership, and applying it to the payment of these claims in preference to the mortgage debt (Fosdick v. Schall, 99 U. S. 235; Burnham v. Bowen, 4 Sup. Ct. 675; St. Louis, A. & T. H. R. Co. v. Cleveland. C., C. & I. Ry. Co., 8 Sup. Ct. 1011; Railroad Co. v. Hamilton, 10 Sup. Ct. 546; Morgan's L. & T. R. &

S. S. Co. v. Texas Cent. Ry. Co., 11 Sup. Ct. 61), or on the ground that the payment of the claims is necessary to preserve the mortgaged railroad and to keep it a going concern."

From this case it is clear that diversion of income is not a universal condition of preference. This is confirmed by the language of Mr. Chief Justice Fuller, speaking for the circuit court of appeals for the Fourth circuit in Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 10 C. C. A. 323, 62 Fed. 205.

"It must be regarded as settled that a court of equity may make it a condition of the issue of an order for the appointment of a receiver for a railroad company that certain outstanding debts of the company shall be paid from the income that may be collected by the receiver, or from the proceeds of sale; that preferential payments may be directed of unpaid debts for operating expenses accrued within 90 days, and of limited amounts due to other and connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, in view of the interests both of the property and of the public, that the property may be preserved and disposed of as a going concern, and the company's public duties discharged; and that such indebtedness may be given priority, notwithstanding there may have been no diversion of income, or that the order for payment was not made at the time, and as a condition, of the receiver's appointment,—the necessity and propriety of making it depending upon the facts and circumstances of the particular case, and the character of the claims."

The question recurs, when may diversion be absent, and the claim still be a preferential one? This question is answered by Judge Colt in Wood v. Railroad Co., 70 Fed. 741. The learned judge cites all the cases and reviews some of them, and deduces six propositions. Two of them are as follows:

"Fifth. That the current income of a railroad is primarily to be devoted to the payment of current debts, and that where such income has been used for the payment of interest upon mortgage indebtedness, or for permanent improvements, or in any manner has been diverted for the benefit of the mortgagees at the expense of the current debt fund, there must be a restoration, to the extent of such diversion; sixth, that, independently of the question of diversion, debts may be preferred which are incurred for labor and supplies necessary to keep the road a going concern from day to day, or which are the outcome of indispensable business relations, a continuance of which involves the interests of the public and the traffic of the road."

Applying these and other propositions to the facts of the case, the learned judge said:

"There is no allegation in this petition of a diversion of current income for the benefit of the mortgagees, and therefore this claim, as now presented, does not come within the principle of diversion laid down in Fosdick v. Schall, supra, Burnham v. Bowen, supra, and St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., supra. It does appear, however, that the materials purchased were coupling links and pins and tank steel furnished from time to time between September 22 and December 8, 1893; and the petition alleges 'that said supplies were necessary to the operation, from day to day, of said railroad.' I am of opinion that the petition states a case which brings this claim within that limited class of debts incurred for labor and supplies necessary to keep the road a going concern from day to day, and that it should be held to possess a superior equity over mortgage liens, upon the principle recognized in Miltenberger v. Railway Co., 1 Sup. Ct. 140; Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., supra; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473; Thomas v. Car Co., supra; Hale v. Frost, 99 U. S. 389.

The case was affirmed on appeal by a very guarded opinion delivered by Judge Putnam. It may be said, in passing, that the circuit court of appeals made the claim a lien on the body of the

railroad, in accordance with the authority of Miltenberger v. Railway Co., saying:

"So far as we have discovered, Miltenberger v. Railway Co. is the only instance in which the supreme court has in fact allowed accrued supply bills a priority against the corpus of mortgaged property; and, as we understand that suit, the circumstances of the case at bar, in its final stages, are substantially the same, for our present purposes, and we have followed strictly its conclusions, without going beyond them."

This case is at the limit of authority as to its facts, while as to law it precisely defines it. There has been a decided modification of prior views by the later cases, or, may be, it is more accurate to say a decided admonition against the impairment of the mortgage lien. In Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, Mr. Justice Brewer gave it emphatic expression, and, among other things, said:

"No one is bound to sell to a railroad company, or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

An example of the same kind is the case of Bound v. Railway Co. (decided by the circuit court of appeals for the Fourth circuit) 7 C. C. A. 322, 58 Fed. 473.

In applying the principles which I have enunciated to the case at bar, there is some uncertainty. The allegations of the petition are somewhat confusing. They assign the services to construction, repairs, and expenses of operation. As far as they were for construction, they must be governed by the case of Railway Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, and cannot be given preference. So far as they are for repairs and improvements, they cannot be given preference, as there is no allegation of diversion of income, nor, indeed, of the receipt of any income. So far as they are for operation,—keeping the works a going concern,—they are within the principles declared, and may be entitled to preference, even out of the corpus. What the services were actually for, I assume the evidence will show, and then can be determined the class to which they belong.

I have assumed that the law as to railroads is the same as that applicable to water companies. The extension, however, is contended against; but I have no hesitation in making it. It is true, I am directed to no case which makes it, but there are analogies between railroads and irrigation districts which justify it. Irrigation districts, in a sense, are new things to our jurisprudence, but old principles apply to them when the conditions of their application exist. Irrigation works, like those of a railroad, are usually constructed on credit, and canal companies conducting them have been declared by the supreme court of the state of California to be quasi public corporations. In Ditch Co. v. Zellerbach, 37 Cal. 577, the court, speaking by Mr. Chief Justice Sawyer, said:

"So, also, there are several classes of corporations, such as public municipal corporations, the leading object of which is to promote the public interest; corporations technically private, but yet of a quasi public character, having in view some great public enterprise, in which the public interests are directly involved to such an extent as to justify conferring upon them important governmental powers, such as an exercise of the right of eminent domain."

And in Price v. Irrigating Co., 56 Cal. 431, the court, speaking by Mr. Justice McKinstry, said:

"Every corporation deriving its being from the act above cited has impressed upon it a public trust,—the duty of furnishing water, if water it has, to all those who come within the class or community for whose alleged benefit it has been created. Every such corporation may exercise, on behalf of the public, the power of eminent domain; and no man nor company of men, incorporated or otherwise, can take the property of a citizen for his or their own exclusive benefit. So plain a proposition cannot require elaboration. The power—in its nature a public power—and the public duty are correlative. The duty exists, without any express statutory words imposing it, whenever the public use appears."

See, also, Const. Cal. art. 14, § 1, and San Diego Land & Town Co. v. City of National City, 74 Fed. 79.

The use of water for irrigation, the supreme court of the United States, in Irrigation Dist. v. Bradley (decided Nov. 16, 1896) 17 Sup. Ct. 56, held to be a public use, upon the same reasoning that it was so decided by the supreme court of California. The power of eminent domain cannot be conferred or exerted for any other purpose. Being a public use, therefore, it is essential to the interests of the public that it be kept a going concern. It is as essential that the business of furnishing it be kept a going concern as that the business of a railroad should be kept a going concern. This is a condition of the equitable doctrine of preference. And a water company, therefore, is like a railroad company, not like a coal company; and hence Snively v. Coal Co., 69 Fed. 204, and cases there cited, do not apply. Judge Adams clearly stated the rule of preference as to railroad companies, and the reason of it to be, among other things, that a railroad corporation was a quasi public one, as we have seen a water company is by the laws of California. The demurrer to the petition of Alloway, together with demurrers to the similar petitions of James Blakeley, Theo. Caldwell, A. H. Cowell, N. Densmore, George Faass, E. Franklin et al., Fred Grohe, James A. Griffin, J. Lane, Sailsbury & Vickory, and W. H. Williams will therefore be overruled, with leave to complainant to answer the petitions within 10 days.