NEW YORK GUARANTY & INDEMNITY CO. et al. v. TACOMA RAILWAY & MOTOR CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 11, 1897.)

No. 370.

1. STREET RAILROADS—INSOLVENCY AND RECEIVERS—PRIORITY OF CLAIMS.

A cable sold to a cable railway being necessary to keep the road a going concern, the claim for its price is entitled, on the insolvency of the company and the appointment of a receiver, to priority over the mortgage bonds, without showing any diversion of income. And such priority may be allowed though more than two years elapsed between the time the cable was furnished and the appointment of the receiver.

2. EQUITY PROCEDURE—FINAL DECREES—INTERVENTION.

Where the court at one term files an opinion announcing its decision directing a foreclosure and sale, but the final decree in pursuance thereof is not entered until the ensuing term, the court retains jurisdiction during the latter term to permit interventions for the purpose of asserting claims against the proceeds of sale. Its power does not cease on the expiration of the term at which its opinion is announced.

3. LACHES.

Plaintiff sold a cable to a cable-railway company, and delivered it September 17, 1892. On October 5, 1893, he brought an action for the price, and recovered judgment April 3, 1896. A receiver having in the meantime been appointed for the railway company, plaintiff filed his judgment claim in the receivership suit on March 26, 1897. *Held,* that the claim was not barred by laches.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

Thomas Burke and D. J. Crowley (Burke, Shepard & McGilvra and Crowley & Grosscup, of counsel), for appellants.

Charles A. Murray and Walter Christian, for appellee Broderick & Bascom Rope Co.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This is an appeal by the New York Guaranty & Indemnity Company, trustee, complainant, and George W. Bird and S. Z. Mitchell as receivers of the property of the Tacoma Railway & Motor Company, from an order of the court below making the claim, in the sum of $620.45, of the Broderick & Bascom Rope Company, an intervener in said case, a preferred debt over the mortgage held by the complainant. The suit was brought by the complainant on February 14, 1895, to foreclose a mortgage or deed of trust held by it upon the properties of the Tacoma Railway & Motor Company. The court below on December 23, 1896, rendered its decision, foreclosing the mortgage held by the complainant, and ordering the sale of the road; but the record shows that the final decree was not signed and entered of record until the 19th of February, 1897, in the ensuing term. Under this final decree the mortgaged property was sold on March 26, 1897, for $100,000, and this sale was confirmed by an order of the court below on March 31, 1897. The record further shows that only one defendant besides the motor company was joined in the foreclosure suit, and that, down to the time of the final decree and sale, no creditor had intervened in the cause. On the same day

upon which the order of confirmation of the sale was made, but subsequent to the entry thereof, the Broderick & Bascom Rope Company presented, for the first time, its motion for leave to intervene. This was granted, and thereupon it filed its petition in intervention, setting up a claim of preference over the mortgage indebtedness. The claim consists of a judgment recovered by the intervener, the principal appellee here, in the state court of Washington, against the defendant motor company, on April 30, 1896, for the sum of $562, and $58.45 costs, aggregating $620.45, and was founded on an indebtedness for a wire cable sold by the intervener to the motor company on October 24, 1892. A stipulation of facts was entered into between counsel for the respective parties, which is as follows:

"(1) The insolvency of the Tacoma Railway & Motor Company, principal defendant in this action, dates from the 20th day of December, 1894, and that prior to said date said corporation was solvent. (2) The action in which judgment was rendered, which is the basis of this intervention, was commenced in the superior court of Pierce county on the 5th day of October, 1893, and said cause was pending until final judgment rendered on or about April 30, 1896, and that said cause was based upon a claim amounting to $2,800, and the whole thereof was contested by the Tacoma Railway & Motor Company, and a cross claim was alleged by the Tacoma Railway & Motor Company in its answer. As a result of the trial of said issues a verdict and judgment was entered for the sum of $562, and $58.45 costs. (3) The claim sued upon by the said intervener, Broderick & Bascom Rope Company, which resulted in the judgment referred to in the last preceding paragraph, was for the contract price of a certain cable rope ordered by the principal defendant, Tacoma Railway & Motor Company, on July 7, 1892; and the said cable rope was delivered in pursuance to said order on or about October 24, 1892, and was thereafter used in the operation of the cable-railway line of the railway described in this action, being a part of the corpus of the property foreclosed in this action; said cable being used until about the month of May, 1893; being for the period of one hundred and nineteen days said cable was used in the operation of a portion of said railway system. (4) It is agreed that the principal defendant, Tacoma Railway & Motor Company, executed and delivered to the plaintiff in this action, as trustee, on or about July 2, 1892, a mortgage upon the entire plant of the Tacoma Railway & Motor Company, together with extensions thereof and after-acquired property, all of which is the property sold in this action on March 26, 1897, for the sum of $100,000, which sale was on this date, to wit, March 31, 1897, confirmed by the court. There are no other funds or property applicable to the payment of said mortgage debt. That the amount of bonds secured by said mortgage, and sold by virtue of the terms of said mortgage, and falling under its operation, is the sum of $1,240,000, and that the judgment rendered in the principal action herein for foreclosure, for the sum of upwards of $1,400,000, is a valid judgment, in so far as the same fixes the indebtedness secured by said mortgage. And it is further agreed that the claim which is the basis of this intervention of Broderick & Bascom Rope Company was not secured by said mortgage, and has never been paid. It is further agreed that between the 24th day of December, 1894, and the 1st day of April, 1895, the original claim for $2,800 of the Broderick & Bascom Rope Company was presented to receiver, George W. Bird, then being the sole receiver, together with the statement that said Broderick & Bascom Rope Company would claim that said claim should be paid in preference to, and prior to, the mortgage indebtedness; and on said presentation said Bird, as receiver, rejected the entire claim, and denied that said claim, or any part thereof, was valid and was entitled to any preference. Subsequently said Bird became a party to the action then pending thereon, and judgment was rendered as hereinbefore stated. That said judgment did not assume or pretend to fix or adjudicate the subject of preference, but simply determined the validity of the claim as binding obligation of the Tacoma Railway & Motor Company, to the amount thereof as hereinbefore stated, to wit, the sum of $620.45, judgment and costs."

The court below, as stated, allowed the intervener's claim, in the sum of $620.45, as a preferential debt over the mortgage indebtedness, and directed the payment thereof from the funds in the registry of the court. It is from this order and the decree entered in accordance therewith that the complainant, the New York Guaranty & Indemnity Company, and the receivers of the Tacoma Railway & Motor Company have appealed. The assignments of errors are seven in number, but they can be said to raise but three questions, viz.: (1) Is the judgment claim of the intervener, the Broderick & Bascom Rope Company, entitled to preference over the mortgage lien? (2) Had the court below jurisdiction to make the order of preference appealed from? (3) Is the claim stale, and barred by laches?

We think that the first proposition may be briefly disposed of. It is unnecessary to attempt to review the many decisions which lay down the principles upon which claims for services rendered and materials, supplies, etc., furnished to railroads are preferred over the mortgage indebtedness. It is sufficient, for the purposes of this case, to say that such claims are preferred over the mortgage lien when they involve debts incurred which were necessary "to keep the road a going concern, or which are the outcome of indispensable business relations, a continuance of which involves the interests of the public and traffic of the road." Judge Colt, in Wood v. Railroad Co., with respect to the intervention of the Carnegie Steel Company, Limited, for the allowance of a claim for coupling links and pins and tank steel as a preferred debt. 70 Fed. 741-743. For statements of the principles governing the allowance of preferential claims, see the following authorities: Fosdick v. Schall, 99 U. S. 235; Hale v. Frost, Id. 389; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 8 Sup. Ct. 101; Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824; Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473; Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 52 Fed. 524; same case, on appeal, 10 C. C. A. 323, 62 Fed. 205; Central Trust Co. v. Charlotte, C. & A. R. Co., 65 Fed. 264.

Was the cable in question necessary "to keep the road a going concern"? The stipulation of facts simply states that the cable rope involved in this claim was ordered by the defendant the Tacoma Railway & Motor Company on July 7, 1892, and that it was delivered in pursuance of said order on or about September 17, 1892, and was placed in use on or about October 24, 1892, and was thereafter used in the operation of the cable-railway line of the defendant company until about the month of May, 1893; being for the period of 119 days that the cable was used in the operation of a portion of said railway system. It will be observed that there is no statement in the stipulation of facts that the cable was necessary

to keep the road a going concern. In the petition in intervention, however, will be found the following allegation:

"(11) That the said cable sold by said Broderick & Bascom Rope Company to said Tacoma Railway & Motor Company was actually used by said Tacoma Railway & Motor Company in the operation of its said cable street railroad line in the city of Tacoma, described as aforesaid, for the period of 119 days, and that the said wire cable was actually necessary for the operation of said cable road during said period of time."

There is nothing in the stipulation to negative this allegation in the petition. But, aside from this, it must be obvious that the road could not have been kept in operation without the cable in question. It was one of the very means by which the road was operated and kept a going concern. Without it, this portion of the cable-railway system could not be operated at all. It could not discharge its duties to the public, or derive an income from earnings. It is impossible to imagine a case where anything was more necessary to keep this portion of the street railway a going concern, both in the literal and financial sense of the term, than the cable in question. As well might the road have been without engines, fuel, or cars, as without a cable. In Wood v. Railroad Co., supra, the claim of the Carnegie Steel Company, Limited, intervener, for the price of certain coupling links and pins and tank steel, was preferred over the mortgage lien, on the ground, upon a demurrer to the petition in intervention, that the petition alleged "that said supplies were necessary to the operation, from day to day, of said railroad." Certainly, coupling pins and links could be of no greater necessity to the operation of a railroad than a cable to the operation of a street cable road. In Railroad Co. v. Lamont, 16 C. C. A. 364, 69 Fed. 23, the claim preferred was for providing, furnishing, and maintaining for the railroad company waiting rooms for its passengers, office room for its ticket agents, and a convenient place for its employés to board and lodge at reduced rates. Judge Caldwell, in delivering the opinion of the circuit court of appeals for the Eighth circuit, used the following vigorous language:

"To defeat the preferential character of this claim, the court would have to be satisfied that waiting rooms for passengers and an office for ticket agents are not essential or necessary, at a town of several thousand population, on the Northern Pacific Railroad. We are asked, in effect, to hold that passengers on that road, while waiting to take passage on its trains, must endure the rigors of a North Dakota climate without shelter, and that its ticket agent must be content with an office on the public commons, and carry his tickets in his pocket or his hat. The road is in straits, financially, but we are unwilling to believe that its business is so unremunerative and its patronage so slender as to justify it in dispensing with waiting rooms and a ticket office at one of the most important towns on its line west of the Mississippi river. Decided by the strictest rules applicable to this class of cases, the intervener's claim was clearly a preferential debt."

In the case of Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, a liability incurred by an intervener as surety for a railroad company on an injunction bond to stay execution of a judgment at law against the company, executed more than six years before the date of filing the petition in intervention, was held a preferential claim, on the ground that it tended to preserve the property mort-

gaged. It is true that the supreme court has repeatedly declared that preferential claims would be allowed but within very narrow limits, and has time and again admonished the circuit courts that such claims would be limited to wages of employés, supplies necessary for the maintenance of the road, and current operating expenses essential to keep it a going concern. Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473; Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 79 Fed. 202, and cases there cited. But it is also true that the application of the general rules as to preferential claims enunciated by the supreme court depends to a large degree upon the particular circumstances of each case. Wood v. Railroad Co., supra, and cases there cited. It is upon this ground that we distinguish the many cases cited by counsel for the appellants, which would seem to militate against the allowance of the claim in this case as a preferential one. We think, under the circumstances of this case, that the cable in question, without which, confessedly, this part of the street-railway system could not have been kept in operation and as a going concern, comes within the category of debts which may be preferred over the mortgage indebtedness. We do not think, as contended for by counsel for appellants, that the cable can be regarded in the light of repairs, or for construction or improvements, within the sense of the rules laid down by such decisions as Railway Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546; Thomas v. Car Co., 149 U. S. 110, 13 Sup. Ct. 824; and other cases of a like character. The question here is not so much whether the cable involved in this claim for preference is to be regarded in the light of repairs, or for construction, or as an improvement, or in the nature of materials or supplies furnished; but it depends upon the inquiry whether or not it was necessary to keep the road "a going concern," within the meaning of this expression as it is used by the supreme court in the cases cited above.

It is further contended that the claim in question is in the nature of a claim for repairs and improvements, and that, to make out a case for preference, there must have been some diversion of income, which otherwise would have been applied, or was properly applicable, towards the payment of the claim, to payment of bonded interest, or otherwise to the benefit of the security; citing Farmers' Loan & Trust Co. v. Northern Pac. R. Co., 68 Fed. 36, 37. But, to use the language of Judge Caldwell in Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182–189—

"It is an error to suppose that such debts can only be given priority where there has been a diversion of the income of the road. Nor is it true that they can only be paid out of the earnings of the road, and cannot be made a charge on the corpus of the property. A diversion of the income is not essential to give them priority, and they may be made a charge on the corpus of the estate if the earnings are not sufficient to pay them,"—citing Miltenberger v. Railway Co., 106 U. S. 286–311, 312, 1 Sup. Ct. 110; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434–457, 6 Sup. Ct. 809; Thomas v. Railway Co., 36 Fed. 808.

Judge McKenna, in his opinion in Atlantic Trust Co. v. Woodbridge Canal & Irr. Co., 79 Fed. 39–41, himself concedes this; for,

83 F.—24

after quoting at length from the opinion of Circuit Judge Sanborn in Trust Co. v. Riley, 16 C. C. A. 610, 70 Fed. 32, he says:

"From this case it is clear that diversion of income is not a universal condition of preference."

See, further, Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 10 C. C. A. 323, 62 Fed. 205; Wood v. Railroad Co., supra.

Nor can it be said that there is a fixed, arbitrary rule, barring preferential claims that have been contracted more than six months before the appointment of a receiver. In Railroad Co. v. Lamont, supra, it was said:

"A preferential debt is not barred, though contracted more than six months before the appointment of a receiver. As to such debts, there is no arbitrary six-months rule, as has been often decided."

In the case cited the indebtedness accrued more than six months before the receivership. In Atkins v. Railroad, 3 Hughes, 307, Fed. Cas. No. 604, the claim was 22 months old at the time of the appointment of the receiver. In the case of Hale v. Frost, 99 U. S. 389, the supreme court gave priority to a claim for materials furnished 3 years before the appointment of the receiver, and for which a note had been given 16 months before the receiver was appointed. In Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, priority was given to a claim for coal supplied 11 months before the appointment of a receiver. In Trust Co. v. Morrison, supra, a liability incurred by the intervener as surety for a railroad company on an injunction bond to stay the execution of a judgment at law against the company, executed more than 6 years before the date of the filing of the petition in intervention, was held a preferential claim. See, also, Douglass v. Cline, 12 Bush, 608; Skiddy v. Railroad Co., 3 Hughes, 320, Fed. Cas. No. 12,922; Williamson's Adm'rs v. Railroad Co., 33 Grat. 624. In the case at bar the cable was delivered on September 17, 1892, and was placed in use on October 24th of the same year. The defendant motor company was solvent until December 20, 1894, and on December 24th of that year a receiver was appointed by the state court to take possession and charge of the property of the company. The time that elapsed between the delivery of the cable, and the appointment of the receiver by the state court, would therefore be about 26 months, or a little over 2 years. But it is to be observed that the intervener began suit in the state court of Washington before the receiver was appointed, on October 5, 1893, which would be about 12 months after the delivery of the cable. It recovered judgment on April 3, 1896, which was subsequent to the appointment of the receiver by the state court. The period of time that transpired between the time that the intervener instituted its action and the appointment of the receiver cannot properly be included in this computation of time. Such delay as there was, incidental to the proceedings in the state court of Washington, cannot be imputed to, nor tend to the prejudice of the intervener's rights. Without elaborating upon the proposition any further, we are of the opinion that the claim for the cable in question should be made a preferred debt.

The second proposition relates to the question whether the court

below had jurisdiction to make the order of preference appealed from. On December 23, 1896, the same being within the July term, the court below announced its decision from the bench; foreclosing the mortgage held by the complainant, and ordering the sale of the property mortgaged. The final decree, drawn up in pursuance of the court's decision and order, was, however, not actually signed and entered of record until February 19, 1897, a day within the following (February) term. It is contended that the final decree should take effect as of the day on which the court announced its decision and entered its order of foreclosure and sale, viz. on December 23, 1896, and that the court had no power to entertain the petition in intervention; a new term having intervened before the intervener filed its petition. We do not think the point is well taken. In our opinion, the final decree must take effect as of the time it was actually signed by the judge and filed for record with the clerk, and not from the time that the court announced its views, and directed that orders be entered, upon which, subsequently, the final decree was based. The decree cannot be said to have possessed the solemnity of a judicial record until signed and entered for record. As was well said in Lynch v. Gaslight Co., 42 Barb. 591:

"No decree can be said to be entered of record until it is formally drawn out and filed by the clerk. A mere order for a decree, before it is extended in due form and in apt and technical language, cannot be held to be a complete record of the judgment of the court."

See, also, 1 Freem. Judgm. (4th Ed.) § 39. There is no pretense that the final decree was to be entered nunc pro tunc as of the date of December 23, 1896. As the intervener filed its petition in intervention within the same term that the final decree was signed and entered of record, it stands to reason that the court was correct in entertaining the same.

The third point made by the assignments of error is that the claim is stale, and barred by laches. The cable was delivered to the defendant motor company on September 17, 1892. On October 5, 1893, the intervener brought suit against the company, in the state court of Washington, to recover the sum of $2,800, alleged to be the price of the cable. The company disputed the claim, and alleged a counterclaim. The company became, as hereinbefore stated, insolvent in December, 1894; and in the same month the president of the company instituted an action in the state court of Washington, in which a receiver was appointed to take possession of the property of the company. Between December 24, 1894, and April 1, 1895, the intervener notified the receiver appointed by the state court of its claim for $2,800, and that it would claim that it should be paid as a preferential debt, but said claim was rejected. Subsequently the receiver was made a party defendant to the suit instituted by the intervener in the state court for the price of its cable. On April 3, 1896, the intervener recovered judgment against the motor company and the receiver for the sum of $620.45. The suit to foreclose the mortgage was brought by the complainant in the circuit court of the United States for the district of Washington in February, 1895. Thereupon the receivership suit in the state

court was removed to the circuit court, and later an order was made by the court below consolidating the two suits under the title of the suit now under consideration, and appointing an additional receiver to the one appointed by the state court. The court below, by its final decree of February 19, 1897, as previously stated, foreclosed the mortgage, and ordered the property to be sold. In pursuance thereof the property was sold on March 26, 1897, for $100,000, which sale was confirmed by an order of court on March 31, 1897. On the same day, but subsequent to the confirmation of the sale, the intervener moved for leave to intervene, which was granted. From this statement of the proceedings which took place in the respective suits, we cannot say that there were such laches on the part of the intervener as would justify us in declining to recognize its claim. It instituted and prosecuted to judgment the claim in the state court. It notified, and presented its claim to, the receiver appointed in the receivership suit instituted in the state court. It intervened in the circuit court in this suit while the court still retained control and custody of the proceeds of sale from the mortgaged premises. The mere fact that it did not present its claim before the final decree was signed and entered, and the property sold, cannot affect its rights. No showing is made that such delay as there was has or will materially prejudice the rights of any one. Upon the whole of the case, we think that the judgment of the court below, in preferring the claim of the intervener, the Broderick & Bascom Rope Company, in the sum of $620.45, was correct, and the same is hereby affirmed.