ATLANTIC TRUST CO. v. WOODBRIDGE CANAL & IRRIGATION CO.
(THOMPSON, Intervener).

(Circuit Court, N. D. California. March 15, 1897.)

WATER COMPANIES—PRIORITY OF SCRIP OVER MORTGAGE LIEN.

Scrip issued by a water company in payment of claims for labor furnished for construction or repair, which stipulates that it is accepted for the purpose only of being used in payment for the purchase of a permanent water right, "and not as a claim against the company for any other purpose whatever," is a floating right, not yet attached to any specific property, and, in the absence of a showing by the holder that he has land alongside the canal or ditch, and that the ditch has arrived opposite his land, accompanied by an offer of the scrip in payment for the permanent water right, it cannot be recognized to the prejudice of a prior mortgage lien by decreeing a conveyance of a water right, or by providing in the decree that the holder shall be paid that amount of the scrip out of the proceeds of the sale of the ditch property in advance of the mortgage, or by decreeing that it shall be recognized as a subsisting right by the purchaser of the property.

Scrivner & Schell and John B. Hall, for complainant.

Budd & Thompson and W. M. Cannon, for J. C. Thompson, intervener.

MORROW, District Judge (orally). This is an intervention of J. C. Thompson for the specific performance of certain contracts for water rights. The petitioner alleges, among other things:

"That the defendant, the Woodbridge Canal & Irrigation Company, on and for a long time prior to the first day of· October, 1894, was the owner of, and in the possession of, and operating, the system of canals and ditches described in the amended bill of complaint on file herein, reference to which for more particular description is hereby made. That the defendant, the Woodbridge Canal & Irrigation Company, continued to be the owners of, and in the possession of, and to operate and carry on, construct, and maintain, the system of canals and ditches described in the complaint, until this honorable court, on the 3d day of October, 1894, took possession of all the property of the said defendant, the Woodbridge Canal & Irrigation Company, by the appointment of a receiver, who then took, and ever since has had and now has the charge, control, and possession of, all the property of said corporation. That prior to the time that said receiver took possession of the property of said corporation, the said corporation, the Woodbridge Canal & Irrigation Company, at various times, which are hereinafter fully set forth, for value received, made, executed, and delivered to the parties hereinafter named, and of whom your petitioner is the assignee, certain scrip, true copies of which are hereinafter fully set forth in this petition, which said scrip was issued in payment for work, labor, and materials done and furnished by the various persons, assignors of your petitioner named herein, and which said scrip was issued and was to be received by the company for the purchase of permanent water rights from said Woodbridge Canal & Irrigation Company, and was accepted by your petitioner's assignors for such purpose, and to be applied in the purchase of water rights from the said Woodbridge Canal & Irrigation Company. That heretofore, to wit, on the 30th day of July, 1892, the Woodbridge Canal & Irrigation Company issued and delivered to Byron D. Beckwith, for value received, that certain scrip No. 3,. in words and figures following, to wit: 'No. 3. Office of the Woolbridge Canal & Irrigation Co. $400.00. San Francisco, Cal., July 30th, 1892. This is to certify that this scrip will be taken by the Woodbridge Canal & Irrigation Company for the amount of four hundred dollars ($400.00) from Byron D. Beckwith or his assigns, in payment for any debt or debts due or to become due by him to this company, for the purchase of permanent water rights (but not for rentals or interest), at the time he shall present the same properly indorsed to the San Francisco office of this company. And the said Byron D. Beckwith accepts the same for such purpose, and such purpose only, and not as a claim against this company for any other purpose whatever.' "

It appears, further, by the allegations of the bill, that this scrip was assigned and set over to John C. Thompson, the petitioner. The intervention refers, in the same language, to a number of other instruments of the same character. The dates, numbers, and sum total of these certificates are as follows:

| | | | |
|---|---|---|---:|
| July 30, 1892, 14 contracts | | | $ 5,200 00 |
| May 31, 1893, 2 | " | | 100 00 |
| Oct. 30, 1893, 1 | " | | 662 50 |
| Feb. 9, 1894, 10 | " | | 2,313 69 |
| Feb. 27, 1894, 2 | " | | 200 00 |
| July 9, 1894, 2 | " | | 100 00 |
| Aug. 4, 1894, 6 | " | | 2,259 20 |
| Aug. 7, 1894, 1 | " | | 23 42 |
| Sept. 11, 1894, 1 | " | | 132 45 |
| 39 contracts | | | $10,991 26 |

—without interest.

The petition concludes as follows:

"That the action above entitled was brought by the Atlantic Trust Company, a corporation, against the said corporation the Woodbridge Canal & Irrigation Company, to foreclose a certain deed of trust upon all of the said canal and other property of said defendant corporation, and that said deed of trust was given and executed to secure the payment of certain bonds issued by the defendant corporation. That said deed of trust is set out in full in the amended bill of complaint in said action, and is hereby specially referred to and made a part of this petition. That the defendant in said action, the Woodbridge Canal & Irrigation Company, failed to appear in said action or to plead therein within the time allowed by law and the rules of this court, and the plaintiff has, by reason of defendant's said default, entered a judgment pro confesso against said defendant. That a final judgment and decree will soon be entered in said action foreclosing all defendant's rights in and to said property, and the whole thereof, and ordering and directing a sale of all of said property pursuant to said decree. That in and by said decree and foreclosure sale defendant will be foreclosed of all right and interest in said property, and will be unable to honor the said scrip above set out, and that said scrip will thereby become valueless, unless the same is enforced against the property of said company by this honorable court. That before the filing of this petition, and after the assignments aforesaid, the petitioner, being desirous of purchasing from said defendant permanent water rights in said canal system, and the water thereof, tendered to the said receiver all of the said water scrip, and demanded that said receiver issue, grant, and transfer to the petitioner water rights in and to the water of said canal and branches on lands within the flow of the water of said canal, but said receiver refused, ever since has refused, and still refuses, to comply with said demand, or to recognize said scrip in any manner whatsoever, although said receiver had and has it in his power to comply with said demand, as petitioner is informed and verily believes. That petitioner and his assigns have duly done and performed all the obligations of said scrip contracts on their part to be done and performed, and are now ready and willing to deliver up said scrip to said receiver, or to deposit the same in court, in payment for permanent water rights, as aforesaid, and to do and perform any and all other acts and things necessary or proper to be done or performed by them in the premises. That certain of the said scrip bears interest upon its face value at the rate specified therein, to be payable in permanent water rights in the same manner as provided in said scrip for the redemption thereof."

## The petition then prays:

"That a decree be entered directing the said receiver to sell and convey to petitioner permanent water rights in the said canal system and property equal in value to the face value of the said scrip with accrued interest, and that he, the said receiver, make, execute, acknowledge, and deliver to said petitioner good and sufficient grants and deeds of conveyance of said permanent water rights, and that said receiver receive the said scrip in full payment for said water rights, and that he be further ordered to place petitioner in possession thereof. Petitioner further prays that his rights and equities under said water scrip be fully investigated and adjudicated by this honorable court, and that petitioner be adjudged to have a decree of specific performance against said receiver, and against all the parties to said action, and that this honorable court, in its final judgment and decree in said action, recognize the petitioner's rights under said scrip, and order and decree that said scrip shall constitute a permanent charge on the said property for permanent water rights, and that all purchasers of said property and canal system, under foreclosure sale or otherwise, shall take the said property and system subject to the said charge, and the rights and equities of petitioner under said scrip; and that it be further adjudged in said decree that said scrip, or the water rights issued thereon, shall be as valid and binding as against any purchasers of said property under the process of this court as it is against the said defendant, the Woodbridge Canal & Irrigation Company."

This petition was amended in the following particulars; that is, particulars that are essential to be considered upon this question:

"Petitioner avers that the said scrip, and each piece thereof, was issued and executed by said corporation to the above-named parties for work, labor, and services theretofore done and performed by them for said corporation, and upon the canal system and property of said corporation; that said work, labor, and services were and are of the reasonable value of the amounts mentioned and set out in each of said scrip contracts, respectively; that the indebtedness created by said corporation for said work, labor, and services was for the necessary current expenses incurred by said defendant corporation in the operation of said canal system and property, and for the necessary current expenses incurred by said corporation in preserving said canals and canal system, and contributed largely to the advantage of the bondholders of said defendant, and said work, labor, and services were essential to the conservation and preservation of the property of said defendant above and in the amended bill of complaint herein described, and to the security of defendant's bondholders, and were necessary to keep said canal property and system a going concern. Petitioner further avers that all the income from said canals and ditches during the time of its operation, and during the time of the employment of petitioner's assignors, was diverted from the payment of the wages of your petitioner's assignors to the permanent improvement and equipment of said canals and canal system, and to the payment of the interest due to the bondholders of said corporation aforesaid. Petitioner, in addition to the prayer of his petition herein, further prays this honorable court that if said court cannot equitably enforce the said scrip against said property as permanent water rights, then, and in that event, this court will adjudge that said scrip and claims be preferred over the claims of the mortgage bondholders, and paid out of said property, and the proceeds of any sale thereof, in advance of and in preference to the claims of said mortgage bondholders."

The petitioner refers to the amended complaint, and makes the amended complaint a part of the petition. The original bill of complaint was filed October 3, 1894, and the amended bill December 16, 1895. By reference to the amended complaint, it is found that the bill is for the foreclosure of a mortgage to satisfy the payment of certain bonds which have not been paid in accordance with their terms. Attached to the bill of complaint is the mortgage. The material part of this mortgage is as follows:

"Now, therefore, this indenture witnesseth, that for the purpose of securing the said bonds for $100,000, to be issued as herein provided for, and the interest thereon, according to the true intent and meaning thereof, and also for and in consideration of the premises, and of $10 to it in hand paid by the said trustee, at or before the execution and delivery of these presents, receipt whereof is hereby acknowledged, the said Woodbridge Canal & Irrigation Company has bargained, sold, granted, conveyed, assigned, and set over, and by these presents does bargain, sell, grant, convey, assign, and set over, unto the said Atlantic Trust Company, as trustee, its successors and assigns, the entire corporate property of said Woodbridge Canal & Irrigation Company, and all its lands, tenements, hereditaments, privileges, franchises, rights of way, flowage and riparian rights, easements, and fixtures, now owned or hereafter to be acquired, and all its canals, flumes, head works, gates, dams, bridges, etc., now constructed or to be hereafter constructed, extending from the present point of diversion, in the Mokelumne river, in the town of Woodbridge, in San Joaquin county, aforesaid, in a westerly direction, to Taison and New Hope, in said county, and in an easterly and southerly direction to the Calaveras river, with all other or branch canals that may be hereafter constructed within said territory, south and west of the Mokelumne river, and all the estate, right, title, and interest, claims and demands, rights of way, and other easements, whether at law or in equity, of the said company, of, in, and to the same, and each and every part and parcel thereof; and also all buildings, fixtures, and personal property thereon or belonging to said company, and all receipts, incomes, and profits which said company shall derive

on account of any contract or agreement for the transfer of water rights, as appurtenant to specified lands, excepting and not including the annual rentals for the use of said water and interest on such contracts or agreements."

The bonds are dated July 17, 1891, and the mortgage to secure the payment of 66 of these bonds is dated on the same day, and is prior to the date of any of the scrip mentioned in the intervention of Thompson.

The constitutional provision of this state in relation to water rights is as follows:

"Art. 14. Section 1. The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental or distribution, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner to be prescribed by law: provided, that the rates or compensation to be collected by any person, company or corporation in this state for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the board of supervisors, or city and county, or city or town council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year and no longer. * * *

"Sec. 2. The right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law."

The law upon the subject is as follows (section 552 of the Civil Code of California):

"Whenever any corporation, organized under the laws of this state, furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it, with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation."

It will be observed that this law, under the constitution, refers to water to irrigate lands which a corporation has sold, and which, it provides, shall remain a perpetual easement attached to the land sold. In this case the petitioner set forth as his claim of intervention the ownership of certain scrip which do not appear to be attached to any land, but, as the term "scrip" indicates, they are intermediate instruments of title, not connected with any land, but documents that give to the person to whom they are issued a right at some time thereafter to receive water from the company. The scrip contract is as follows:

"* * * for the amount of four hundred dollars ($400) from Byron D. Beckwith or his assigns, in payment for any debt or debts due or to become due by him to this company, for the purchase of permanent water rights (but not for rentals or interest), at the time he shall present the same, properly indorsed, to the San Francisco office of this company. And the said Byron D. Beckwith accepts the same for such purpose, and such purpose only, and not as a claim against this company for any other purpose whatever."

This is simply an agreement on the part of the company that this scrip may be used for the payment of a permanent water right, whenever any person holding it shall have land to which it may be

attached. It is like the scrip sometimes issued by the government for unlocated land. It is a floating right, not yet attached or assigned to any specific property.

The petitioner, holding this scrip, asks that one of three things be done: (1) That there be a conveyance by the receiver of these water rights to him; or (2) that it be decreed that he shall be paid the amount of the scrip out of the proceeds of the sale of this ditch property in advance of the payment of the mortgage; (3) or, in default of either of the other remedies, that the rights of the petitioner be recognized in the decree,—that is to say, that the scrip contracts be recognized as a subsisting right which will be acknowledged hereafter by the company or by whoever may purchase the property.

Some features of the law of this case have already been established by Judge McKenna in the Matter of the Intervention of William Alloway, claiming preference as a laborer, etc. (79 Fed. 39). Upon that intervention the question was as to whether or not the petitioner was entitled to be paid out of the proceeds of the sale of this ditch in advance of other claims. The court held that, so far as the services or materials were for the purposes of construction, they were not entitled to preference over the mortgage lien (citing Railroad Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546); that, so far as they were for repairs and improvements, they could not be given preference, as there was no allegation in the petition of diversion of income, or, in fact, of the receipt of any income; that, so far as they were for operating expenses,—keeping the works a going concern,—they were entitled to preference over the mortgage lien. It was held, further, that the principles peculiar, in this respect, to railroad corporations, were applicable to water companies; citing Ditch Co. v. Zellerbach, 37 Cal. 577; Price v. Irrigating Co., 56 Cal. 431; San Diego Land & Town Co. v. City of National City, 74 Fed. 79; Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56.

The law having been determined as above set forth, it is incumbent on the court to apply that law to the case as the questions arise. Under this law, can the scrip in question be now recognized in any of the three ways that have been suggested by the petitioner? I determine, in the first place, that with respect to a conveyance of a permanent water right by the receiver, this court has no authority whatever to direct the receiver to make a conveyance to the petitioner holding these claims for water rights. Whatever may have been the origin of these claims, the measure of obligation of the company is now to be found in the terms of this scrip. The, scrip expressly stipulates that it is accepted for the purpose only of a payment for the purchase of a permanent water right, "and not as a claim against this company for any other purpose whatever." If the claims were originally for labor furnished for construction or repair, such claims have now been merged in the terms of this scrip, and the terms of the scrip measure the rights of the holders. The scrip contract is that they shall be entitled to offer this in payment of any water rights. It does not appear

from the petition that any of the water rights sought to be recognized as against the mortgage lien by these scrip contracts are appurtenant or attached to any specific parcel of land. If the petitioner had land alongside of this canal or ditch, and should come into this court and represent that the ditch had arrived opposite his land; that he had this scrip, and wanted to offer it in payment of the permanent water right,—it would present a very different question. But there is no such question presented here now; therefore it is impossible for the court, under the law as the court understands it, to make any order conveying a permanent water right or any water right to the petitioner.

With respect to the second proposition made by the petitioner, that it should be decreed that out of the proceeds of the sale of this property the petitioner shall be paid the amount of his claim, I do not understand the law, as it has been established, gives to the persons holding these claims any priority over the claims of the mortgagees. As I said a moment ago, whatever may be the rights of these original holders of the claims; whatever may have been the rights of the persons who furnished the material and the supplies which resulted in the issuance of these certificates,—their rights are now merged in these scrip contracts. These scrip contracts, in my judgment, must take the same position that mortgages and other documents have taken in railroad companies where they have been issued for the purpose of construction and of making the railroad a going concern. The case which I think decides this question is that of Thompson v. Railroad Co., 132 U. S. 68, 10 Sup. Ct. 29. The case is a long one, but I will refer to it somewhat in detail:

"This suit was brought by holders of obligations of the Indiana, Cincinnati & Lafayette Railroad Company, and on behalf of other holders similarly situated, to enforce an alleged lien claimed by them upon earnings of a section of the road of the White Water Valley Railroad Company against the claim to priority of bondholders secured by an earlier mortgage. The White Water Valley Railroad Company was organized as a corporation in 1865, under the laws of Indiana, with authority to locate, construct, and operate a line of railway from Hagerstown, in Wayne county, of that state, to the town of Harrison, Dearborn county, on the boundary line between Indiana and Ohio. To raise the necessary means to construct the railway, the company issued its coupon bonds to the amount of $1,000,000, in sums of $1,000 each. They were dated August 1, 1865, and were to mature August 1, 1890, and draw interest at the rate of 8 per cent. per annum, payable semiannually. To secure the payment of the principal and interest of these bonds, the company executed to trustees, by way of mortgage, a deed bearing date on that day, of its railroad and all the right of way and land occupied thereby, with the superstructure, and all property, materials, rights, and privileges, then or thereafter appertaining to the road, and the benefit of all contracts with other railroad companies, then existing or thereafter to be made, and all property, rights, and interests under the same. The deed contained the usual covenants to execute suitable conveyances for the further assurance of property subsequently acquired and intended to be included in the instrument. The company soon afterwards commenced the construction of the road, and by the 4th of November, 1867, completed that part of it which lies between the towns of Harrison and Cambridge City, leaving the distance from the latter place to Hagerstown—between seven and eight miles—unconstructed. It was then without the requisite means to equip the part of the road completed, or to undertake the construction of the remaining portion of the road. In this con-

dition it entered into a contract of perpetual lease with the Indianapolis, Cincinnati & Lafayette Railroad Company, a corporation then in existence, in consideration of which the latter company agreed to furnish all the necessary equipments, material, and laborers to operate the line of the road then completed, and to construct and put in good and safe running order for the accommodation of the public that part of the line then uncompleted,—that is, the section between Cambridge City and Hagerstown,—and to pay to the lessor annually the sum of $140,000 in four quarterly payments, of $35,000 each. The contract referred to the mortgage of $1,000,000 before mentioned, and provided for the payment of the interest thereon out of the rents received, and for the resumption of possession by the lessor if the lessee failed to keep its covenants."

The lessee in this case proceeded and constructed the remaining portion of the road between Cambridge City and Hagerstown, and also furnished the necessary equipment to put the whole road in operation; in other words, the lessee made the road a going concern, and, having furnished the material and means for that work, issued its bonds to the two persons who did this work, namely, Smith and Lord. In my opinion, the bonds that were issued to Smith and Lord for the purpose of securing the construction of the remaining portion of this road from Cambridge City to Hagerstown, and for the purpose of equipping and placing the other portion in a going condition and as an operating road, are substantially the same class of obligations that have been issued in this case to the persons who have received these scrip contracts. The court, in this case of Thompson v. Railroad Co., said:

"The claims of the complainants, whatever validity and force may be given to them as liens upon the earnings of the section of road from Cambridge City to Hagerstown, between the parties agreeing to such liens, are entirely subordinate to the rights of the bondholders under the mortgage of the White Water Valley Railroad Company, executed for their benefit to trustees on the 1st of August, 1865. That mortgage was made before the claims of the complainants had any existence."

In the case referred to, the parties who had completed this road and furnished the equipment brought suit on their obligations, and the original bondholders came in as interveners. These original bondholders had secured a foreclosure of their mortgage, and they intervened in this last suit to secure their rights, and, although they came in as interveners where the parties holding the second class of obligations were proceeding to secure the acknowledgment of their rights in court, it was held that these second obligations for the construction of the road and its equipment, under the terms of the agreement, were subordinate to that of the original bondholders.

If the law relating to the construction and equipment of railroads is applicable to this ditch company, as has been held by Judge McKenna, and I am right in understanding the law established in Thompson v. Railroad Co., that case substantially decides the question involved in this case. The bonds in the case cited were, if there was any difference, of a higher order of obligation than the scrip in this case, because, as I have already called attention to the fact, this scrip is an exceedingly undeterminate agreement or contract. If the scrip in the case at bar can be enforced against

the permanent water rights of the corporation as against the prior claim of the mortgagee, it follows that all of the water rights belonging to the company might be conveyed away in this manner, to the prejudice and loss of the mortgagee. It seems to me clear that the mortgagee's prior lien cannot be displaced or divested by any such method. As was well said in Fosdick v. Schall, 99 U. S. 253:

"The mortgagee has his strict rights, which he may enforce in the ordinary way. If he asks no favors, he need grant none."

And in Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 953, Mr. Justice Brewer used the following language:

"No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced."

See, also, 5 Thomp. Corp. p. 5647, § 7122.

The general rule as to the effect of the creation of liens after the execution of the mortgage is thus laid down in 19 Am. & Eng. Enc. Law, 761:

"Contracts made by a railroad company after the execution of a mortgage, and without the consent of the mortgagees, and without a positive statute which enters into the mortgage contract, constitute no lien upon the property or franchise of the corporation superior to that of the mortgage."

Take the case of Dunham v. Railroad Co., in 1 Wall. 254. A short reference to that case will indicate the same principle of law. The court said, referring to the obligations in that case:

"The respondents, in the second place, rely upon the terms of the subsequent agreement made by the company with the contractor for the completion of the route. Counsel of respondents concede that the mortgage to the complainant was executed in due form of law, and the case also shows that it was duly recorded on the 9th day of March, 1855, more than eight months before the contract set up by the respondents was made. All of the bonds, except those subsequently delivered to the contractor, had long before that time been issued, and were in the hands of innocent holders. Contractor, under the circumstances, could acquire no greater interest in the road than was held by the company. He did not exact any formal conveyance, but if he had, and one had been executed and delivered, the rule would be the same. Registry of the first mortgage was notice to all the world of the lien of the complainant, and in that point of view the case does not even show a hardship on the contractor, as he must have known when he accepted the agreement that he took the road subject to the rights of the bondholders. Acting, as he did, with a full knowledge of all the circumstances, he has no right to complain if his agreement is less remunerative than it would have been if the bondholders had joined with the company in making the contract. No effort appears to have been made to induce them to become a party to the agreement, and it is now too late to remedy the oversight. Conceding the general rules of law to be as here laid down, still an attempt is made by the respondents to maintain that railroad mortgages, made to secure the payment of bonds issued for the purpose of realizing means with which to construct the road, stand upon a different footing from the ordinary mortgages to which such general rules of law are usually applied. Authorities are cited which seem to favor the supposed distinction, and the argument in support of it was enforced at the bar with great power of illustration; but suffice it to say that, in the

view of this court, the argument is not sound, and we think that the weight of judicial determination is greatly the other way."

It is claimed, further, on the part of the petitioner, that this mortgage virtually recognizes the permanent water right, and the income from it, and therefore that a conveyance of the kind mentioned in this scrip has been agreed to or acknowledged by the company. I do not so understand the provisions of this mortgage. It conveys all the "lands, tenements, hereditaments, privileges, franchises, rights of way, flowage and riparian rights, easements, and fixtures, now owned or hereafter to be acquired, and all its canals, flumes, head works, gates, dams, bridges," etc., "now constructed or to be hereafter constructed, * * *, and all the estate, right, title, and interest, claims and demands, rights of way and other easements, whether in law or in equity, of the said company, of, in, and to the same, and each and every part and parcel thereof; and also all buildings, fixtures, and personal property thereon or belonging to said company, and all receipts, incomes, and profits which said company shall derive on account of any contract or agreement for the transfer of water rights, as appurtenant to specified lands, excepting and not including the annual rentals for the use of said water, and interest on such contracts or agreements." This is very broad language, and it appears to me that whatever right there was, whatever right in the permanent water right there might be, in connection with this ditch or irrigation company, that right was mortgaged to the trust company, and, in that view, these claims must be held subordinate to the mortgage in this case. This disposes of the petitioner's third proposition, that the scrip should be recognized in the decree.

It was urged upon the argument that the permanent water rights referred to in the scrip were outside the provisions of the constitution of this state, and therefore the action of the officers of the company in issuing the scrip was ultra vires. In the view I take of the subordinate character of the scrip contracts, it will not be necessary to pass upon that question at present; but if, upon the sale of the property, the proceeds should prove to be in excess of the amount due on the bonds secured by the mortgage, the petition may be presented as against such surplus proceeds, and whatever question then remains will be determined. The demurrer to the petition must therefore be sustained.