## GEIS *v.* KIMBER.[1]

*(Circuit Court, E. D. Pennsylvania.* May 21, 1888.)

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIM—BREWING—WORT-MAKING STOCK.

Letters patent No. 249,332, granted November 8, 1881, to Francis J. Geis "for a new and improved mixture or grist for brewing purposes," describing "a mixture or grist for brewing malt liquors, composed of malt and cereals or grain, having the cellulose or integuments and germ or heart removed; the cereals and grain constituting from about 25 to 50 per centum, by weight, of said mixture,"—must be construed as and for "a composition of matter," "a wort-making stock," prepared by compounding a dry mixture of grain free from hulls, etc., and of malt, in the proportion stated.

2. SAME—CONSTRUCTION BY PATENT-OFFICE.

Where it is evident from the record in the patent-office that a certain construction of a patent was there contemplated, and that it would not otherwise have been granted, no objection can be made to the same construction of it by the court on the ground that such construction is narrow, and will render the patent practically useless.

3. SAME—INFRINGEMENT.

The above patent is not infringed by the sale of a manufactured material substantially the same as one of the ingredients in the above composition, with a recommendation to brewers to use it in the mash-tub with the other ingredients of the above composition.

In Equity. Suit for infringement of patent.

*George E. Buckley* and *Edwin M. Hunt,* for complainant.

The sale of an ingredient to persons who intend to use it in the combination claimed in the patent, and advertised and sold for that purpose, is an infringement on the patent. *Bowker* v. *Dows,* 14 O. G. ——; *Wallace* v. *Holmes,* 9 Blatchf. 65; *Coolidge* v. *McCone,* 2 Sawy. 571; *Saxe* v. *Hammond,* 1 Holmes, 456; *Terrell* v. *Sparth,* 8 O. G. 986; *Renwick* v. *Pond,* 5 Fish. Pat. Cas. 569; *Richardson* v. *Noyes,* 10 O. G. 507.

*Rowland Cox* and *Samuel B. Huey,* for defendant.

The patent is invalid, because the mixture or grist described and claimed is a mere aggregation of known things. The grain remains grain, and the malt remains malt; each performing its own distinctive act and function. It is the same as mixing beans of different colors, or pebbles or stones of different appearance. This is made plain by the fact that neither the complainant nor

[1]Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

*defendant* have sold the patented "mixture." The malt of commerce is bought in one place, and the hominy, rice, or other cereal in another place, and the brewer uses them by putting them in his mash-tub, and boiling and mashing them. This is the extent of the alleged infringement. The rule as to aggregations is thus stated by the supreme court: "In a patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other. To draw an illustration from another branch of the law, they must be joint tenants of the domain of invention, seized each of every part, *per my et per tout*, and not mere tenants in common, with separate interests and estates. It must form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions." *Pickering* v. *McCullough*, 104 U. S. 318; *Reckendorfer* v. *Faber*, 92 U. S. 357; *Glue Co.* v. *Upton*, 97 U. S. 3; *King* v. *Gallun*, 109 U. S. 99, 3 Sup. Ct. Rep. 85.

BUTLER, J. The suit is for infringement of letters patent No. 249,-332, issued to Francis J. Geis, "for a new and improved mixture or grist for brewing purposes," dated November 8, 1881. The patent contains a single claim, which reads as follows:

"A mixture or grist for brewing malt liquors, composed of malt and cereals or grain, having the cellulose or integument and germ or heart removed; and the cereals or grain constituting from about twenty-five to fifty per centum, by weight, of the said mixture or grist, substantially as herein specified."

To determine the scope of this claim it is necessary to understand and consider the circumstances under which the patent was granted. The original application presented in December, 1880, was for "new and useful improvements in the process of brewing malt liquors." The alleged invention and its advantages were described, substantially, in most respects, as are set forth in the specifications accompanying the patent. The claim sought to be secured read as follows:

"The process of manufacturing malt liquors consisting in substituting for from twenty-five to fifty per centum of the weight of the malt usually employed a corresponding weight of cereals or grain having the cellulose or integument and germ or heart removed, but containing gluten and albuminoids, substantially as and for the purpose specified."

After consideration by the examiner, the application was rejected. Making slight amendment, the applicant renewed it. It was again considered, and rejected, in the following words:

"The use of cereals deprived of hull, kernel, and all nitrogenous and unfermented matters, in conjunction with malt to form beer, is shown in the English patents to Johnson, 2,082, of 1871, and Newton, 2,360, of 1882; and the use of corn deprived of hull and kernel, for the same purpose, pointed out in the United States patent to Hartshorn, March 5, 1879, No. 220,022, and that to Furbush, already cited."

After further amendment, the application was again renewed, and was again rejected, in the following terms:

"It is old in the processes of manufacturing malt liquors to substitute for malt, in varying proportions a corresponding weight of corn. See, for instance, English patent 94, of 1857, (mashing,) and Distillation, Brewing, and Malting, San Francisco, 1867, p. 30. The purpose of Hartshorn's in-

vention is to improve this old process by first removing from such grain the integument and germ. This seems to be the whole gist of applicant's invention, and, such being the case, it is deemed to be fully anticipated."

Further amending, the applicant again renewed and pressed his claim. It was again rejected, in the following terms:

"This application has been reconsidered and amended. The references of record show that it is old in the process of manufacturing malt liquor to substitute, in varying proportions, cereals for the malt usually employed. It is also shown to be old to use for the same purpose cereals having the 'cellulose, heart, and germs' removed. Instead of treating cereals thus prepared in the way preferred by Hartshorn, applicant merely adopts the older method followed in treating ordinary grain. To test the grain as prepared by Hartshorn in the old way, is not seen to require the exercise of invention. In other words, applicant has neither discovered that grain can be substituted for a portion of the malt in the ordinary brewing process, nor that such grain, with hulls and heart removed, will better answer as such substitute. The applicant is again and finally rejected."

These several decisions of the examiner were, we believe, clearly right; not only for the reasons stated by him, but for others as well, deducible from the proofs in this case. A brief review of the state of the art will show this, and afford additional aid in construing the claim. Cereals —rice, wheat, and corn—had been used in combination with malt in manufacturing malt liquors for many years. These grains contain qualities adapted to such use, and, being cheaper than malt, had long been thus used. The hulls and germs contain objectionable matter, which render it important to exclude them. This was universally understood by the trade. "Commercial" rice is virtually, if not absolutely, free of them; wheat and corn meal are measurably so. The subject of using these grains, and the importance of removing the hulls and germs, are referred to in various publications, and also in numerous letters patent, introduced into the case. The preparation of corn known as "hominy" contains less of these objectionable parts, probably, than any other preparation of that grain. It is not absolutely free; necessarily a small part remains, even with the greatest care in preparation. Notwithstanding some reference is made to hominy in this connection, in one or two publications, the importance of adopting it instead of corn-meal seems very generally to have been overlooked. There is evidence of its use, however, at St. Louis, as early as 1876. The complainant, (a practical and experienced brewer,) believing "hominy" to be the cleanest, and therefore the best, preparation of corn for brewing purposes, commenced its use shortly before his application for a patent. He had discovered nothing new in the art of manufacturing malt liquors. He admits this virtually in the following statement, taken from his application:

"I am aware that a grist composed of malt and grain in its natural state is not new, and I am also aware that it has been proposed to remove from corn the hulls and germs before applying it to this purpose."

This statement, however, falls far short of the entire truth relating to the subject, as we have seen. He doubtless believed himself the first to discover the especial adaptability of "hominy" to brewing purposes.

Others, however, knew as well as he that "hominy" is simply corn with the hulls and germs removed, and, knowing this, would necessarily as well understand its adaptability to this purpose. But he was mistaken, even in the belief that he was the first to suggest and apply this preparation. As we have seen, it was previously suggested by others, and previously applied at St. Louis. He was using it in certain proportions to the malt, as stated in his specifications; but this also was unimportant—*First*, because of the indefiniteness in the statement; and, *secondly*, because no invention was necessary to determine the proper proportions. The complainant ascertained them by experiment; he could do it in no other way. Any brewer could and would do it in the same way, and as readily. Besides, the proportions depend upon the quality of the malt, of the grain, and of the liquor desired. While the supposed discovery went no further, as the proofs show, than seeing and utilizing the special applicability of "hominy" to brewing purposes, the applicant claimed the use freed from hulls and germs.

The conclusions of the examiner, we repeat, were clearly right. After the final rejection by this officer the complainant appealed to the board of examiners in chief. They agreed with the examiner in rejecting the claim. They, however, made the important discovery that the applicant (an expert in the art to which his supposed invention relates) did not know what he had invented; that it was something quite different from what he supposed; not a "process for brewing malt liquors," as he claimed, but a "composition of matter." After thus classifying it, they say:

"Now, the applicant has conceived the idea of preparing a suitable wort-making stock, which will keep any length of time, and which may be sent to any distance, by compounding a dry mixture of unmaltable grain, decorticated and freed from the heart or germ, and of malt, in such proportions that the starch of the one and the diastase of the other will be relatively just sufficient; (25 to 50 per cent. of the unmalted grain;) and he should therefore claim a mixture for purposes which should be named, consisting of malted and unmalted dry grain, describing the kind and naming the proportions."

It is difficult to find any justification for this conclusion. It is not difficult, however, to understand the reasons which led to it. The formation of a mixture of corn (partially, if not wholly, cleansed) and malt, in the mash-tub or otherwise, in the act or process of manufacturing liquor, was old, and therefore the applicant's claim for a "process of manufacturing" could not be allowed. These terms (process of manufacturing) embrace all the acts or steps involved in the manufacture, including, of course, that of preparing or mixing the ingredients. The complainant so understood them; for, although he contemplated from the beginning (and subsequently bound himself to) the preparation of his mixture "before brewing," (another step, simply, in the process,) he called his invention a "process of manufacturing." The formation, however, of the mixture in a dry state—not in the act or process of manufacturing liquor—as an article of merchandise suited to keeping and to transportation, was supposed to be a new article of commerce; and, be-

lieving this to be what the complainant had actually invented, he was advised to alter his claim and specifications, and take a patent for it. The applicant adopted the advice, altered his specifications and claim, and took letters accordingly.

While it may be difficult to see the patentable invention in thus putting together in a dry condition the ingredients in common use for brewing purposes, instead of mixing them in the mash-tub, as was formerly practiced in the process of manufacturing malt liquors, we need not concern ourselves with this question. In view of the facts stated, the claim must be construed as for a "composition of matter," a "wort-making stock," prepared by compounding a mixture of grain, free from hulls and germs, and of malt," in the proportions stated. Thus construed, nothing done in the act or process of manufacturing liquor will infringe the claim. The preparation of a "wort-making stock," composed of the ingredients in the proportions claimed, alone, will constitute such infringement. If it be said this is a narrow construction, and that it will render the patent virtually useless, a sufficient answer may be found in the fact that the patent-office contemplated this construction, and would not otherwise have granted the letters. A broader construction, such as the complainant now seeks, would give him precisely what the office refused.

Has the respondent infringed? He sells an article called "Cerealine," prepared in the manner described in the evidence. We need not trouble ourselves with the question whether this preparation is similar to "hominy," or other cereals cleaned of hulls and germs. Granted that it is, the respondent may sell it to whom he will. Hominy, rice, corn, and wheat flour are among the most common articles of merchandise, and are principally consumed as food. The complaint urged against the respondent, however, is that he sold this preparation to brewers, accompanied by a recommendation of its use for brewing purposes. He did so recommend it. He issued circulars calling attention to it as the "best known material combined with malt, for manufacturing pale pure beer," superior to "malt meal," etc., and suggesting that it be used "in the mash-tub with malt," in the "proportions of twenty-five to thirty-three per ct. of the mash." If he had recommended its use in the preparation of a "dry wort-making stock" for malt liquors, as an article of merchandise, the sale and recommendation would have rendered him responsible for the use subsequently made if his advice had been followed. He, however, did not so recommend. His language, just quoted, would seem to leave no doubt of this. It was to be mixed with the malt in the mash-tub, in the act or process of manufacturing. As the proofs show, practical brewers would so understand the recommendation. It is difficult to see how it could be understood otherwise. A decree may be prepared dismissing the bill, with costs.