# CENTRAL TRUST COMPANY OF NEW YORK, Appellant, *v.* UTAH CENTRAL RAILWAY et al., Respondents.

1. *Receivers and Interveners in a Mortgage Foreclosure.*

A court of equity, when called upon to appoint a receiver of railroad property, with power to operate the road and conduct its business, pending a foreclosure suit, may, in the exercise of its judicial discretion, as a condition of issuing the order, direct the receiver, out of money coming to his hands from such business, to pay the outstanding debts for labor, supplies, equipments, or permanent improvements of the mortgaged property, as may under the circumstances of the order be reasonable.

2. *Debts—When not Barred by Lapse of Time.*

The outstanding debts for labor and other expenses of operating the road are not barred, in consequence of the lapse of time, when contracted within a reasonable time before the appointment of a receiver, and where, as in this case, such impediments were interposed as stood in the way of its adjustment and payment, a suit having been begun against the road within four months after the services had been rendered, and judgment delayed, without the intervener's fault, two years and a half.

3. *Debts Preceding the Mortgage.*

It was not error to order payment by the master of intervener's claim for labor performed and necessary supplies furnished shortly before the execution of the trust deed, since it appeared that the earnings afterwards diverted to pay for permanent improvements, with those in the master's hands, exceeded the claim.

(No. 836.    Decided Oct. 23, 1897.)

Appeal from the Third district court, Salt Lake county. Ogden Hiles, *Judge.*

Action by the Central Trust Company of New York against the Utah Central Railway Company and others. From a judgment preferring the claim of Joseph Goddard, plaintiff appeals. *Affirmed.*

*Frank Pierce,* for appellant.

If there be no earnings, or if the earnings are insufficient to pay expenses, and there be no permanent improvements made and no interest whatever paid, upon no principle of law or equity could the bondholder be made to pay out of his own property the debts of the common debtor. *Finance Company* v. *Charleston Railway,* 48 Fed. 190; *Kneeland* v. *Trust Company,* 136 U. S. 97; *Burnham* v. *Bowen,* 111 U. S. 782; *Wood* v. *Guarantee Trust Co.,* 128 U. S. 416; *Thompson* v. *White Water Co.,* 132 U. S. 68; *Porter* v. *Pittsburg Bessemer Steel Co.,* 120 U. S. 649; *Fogg* v. *Blair,* 133 U. S. 534.

Current debts are chargeable to current income. The equity rule goes no farther than this. See the following additional cases: *Farmers' Loan & Trust Co.* v. *Vicksburg Ry.,* 33 Fed. 778; *Ames* v. *U. P. Ry.,* 74 Fed. 335; *McIlhenny* v. *Binz,* 80 Tex. 1; *Farmers' Loan & Trust Co.* v. *Northern Pacific,* 71 Fed. 245.

The bondholders have restored everything that has been diverted to their benefit, in submitting to the issue of $100,000 receivers' certificates. *Finance Co.* v. *Charleston Ry.,* 52 Fed. 527; *Street* v. *Maryland Ry.,* 59 Fed. 27.

Failure to derive income from the road in attempting to make it a going concern, will not in itself give a right to go against the *corpus* or the proceeds of sale. *Finance Co.* v. *Charleston Ry.,* 52 Fed. 527; *Railroad Co.* v. *Cleveland,* 125 U. S. 658; *Street* v. *Md. Ry.,* 59 Fed. 25; 19 Am. & Eng. Enc 757.

Respecting the rule as to time, see: *Wood* v. *New York &*

*New Eng. Ry. Co.*, 70 Fed. R. 741; *Miltenberger* v. *Ry.*, 106 U. S. 311; *Litzenberger* v. *Jarvis Conklin Co.*, 8 Utah 15; *Thomas* v. *Peoria Ry.*, 36 Fed. 819; *Turner* v. *Ind. Ry.*, 8 Bliss 315; *Blair* v. *St. Louis Ry.*, 22 Fed. 471; *Union Trust Co.* v. *Souther*, 107 U. S. 591; *Ames* v. *U. P. Ry.*, 74 Fed. 345.

In this case the receivers have operated the road at a loss. See: *Kneeland* v. *American Loan & Trust Co.*, 136 U. S. 89; *Union Trust Co.* v. *Illinois Midland*, 117 U. S. 434; *Myer* v. *Car Co.*, 102 U. S. 1; *M'Lane* v. *Placerville Ry.*, 66 Cal. 606.

*John W. Judd, George W. Moyer*, and *Chas. J. Pence*, for respondents.

ZANE, C. J.:

This is an appeal from the decree of the court below preferring the claim of the intervener, Joseph Goddard, amounting to $10,919.50, to the amount decreed to the plaintiff, the Central Trust Company. The plaintiff commenced this suit November 27, 1893, to foreclose a mortgage given by the defendant on its railway, extending from Salt Lake City to Park City, in this state, and obtained a decree on March 8, 1897, for the principal of 200 bonds, of $1,000 each, executed on March 1, 1891, and interest. The intervener's claim was for compensation due him and his assignors for services rendered in operating the defendant's railway from November, 1890, to July, 1891. At the time the suit was commenced, James McGregor and Clarence Cary were appointed receivers of the road on the application of the plaintiff, and were empowered to operate it, and to issue $100,000 receivers' certificates, to be expended in paying outstanding claims against it, and in making necessary improvements thereon. The intervener, Goddard, commenced a suit on Au-

gust 13, 1891, for the amount of his claim against the railway company, and obtained a judgment February 14, 1894, for $8,650.35, which, with interest, constituted his preferred claim in the decree appealed from. These objections made by the plaintiff and the respondent, the railway company, to the intervener's claim, delayed its adjustment, and prevented its payment by the receivers out of the money arising from the sale of the certificates. It appears from the evidence that the receivers paid out of the earnings of the road $7,400 for a locomotive, and $3,863 for constructing a Y, and $7,700, derived from the same source, was in their hands at the time of the trial, which would be paid on the mortgage, unless the claim of the intervener should be paid. The amounts aggregate $18,963.

In view of the foregoing facts, the question arises: Was the court below authorized by the rules of equity to prefer the intervener's claim to that of the mortgage? A court of equity, when called upon to appoint a receiver of railroad property, with power to operate the road and conduct its business, pending a foreclosure suit, may, in the exercise of its judicial discretion, as a condition of issuing the order, direct the receiver, out of money coming to his hands from such business, to pay outstanding debts for labor, supplies, equipments, or permanent improvements of the mortgaged property, as may, under the circumstances of the order, be reasonable. The bondholder, in asking for a receiver for such property, must be presumed to know that such an order cannot be executed without incurring expenses, and that they can only be paid out of the earnings of the road. If he does not wish to consent to such payment, he should permit the road and its business to remain in the hands of the company, and allow such expenses to be incurred and paid by it.

And such creditor must be presumed to have known that he would deprive the company of the means of paying its existing indebtedness by securing the appointment of a receiver, though it may have been incurred in operating the mortgaged property, and in making valuable and lasting improvements upon it, and though the earnings of the road which could not have been realized without such labor, supplies, or expenses, and which ought to have been appropriated, so far as necessary, to their payment, may have been diverted to the payment of interest on his bonds, or in making valuable improvements on the property for his benefit. In equity, the true principle appears to be that the expenses of operating the road, and of necessary equipments and improvements, must be first paid out of the gross earnings, and only the net income can be paid upon the mortgage. The stockholders, mortgagees, and the public are all interested in continuing the operation of the road, which cannot be done without such expenses. Men cannot be expected to contribute their services or their property, to accomplish that end, without compensation or payment; and, after they have done so, it would be exceedingly unjust and inequitable for the court, upon the application of the stockholders, to place the property of the railroad and the management of its business in the hands of a receiver, and thereby deprive it of the means of payment, and give to such creditors its entire earnings. The court who appointed the receivers in this case made an order for the issuance and sale of receivers' certificates to obtain money to pay outstanding indebtedness, and to pay for improvements. But none of the money so obtained was devoted to the payment of the intervener's claim in consequence of the delay caused by the defense made by the railway company to his suit, and by the objection of this plaintiff to the payment of his claim.

In view of the amounts paid out of the earnings of the road during the receivership for valuable and lasting improvements, and for equipments, and of the money from the same source remaining in the hands of the receivers at the time of the trial, the provision of the decree for the payment of intervener's claim, before the amount in the hands of the special master should be paid to the plaintiff, appears to be equitable. It would appear to be inequitable to give the mortgage creditor the benefit of earnings of the road required to pay the laborers for operating it. *Fosdick* v. *Schall,* 99 U. S. 235; *Burnham* v. *Bowen,* 111 U. S. 776; *Trust Co.* v. *Souther,* 107 U. S. 591; *Litzenberger* v. *Trust Co.,* 8 Utah 16; *Farmers' Loan & Trust Co.* v. *Kansas City, W. & N. W. R. Co.,* 53 Fed. 182.

In *Fosdick* v. *Schall, supra,* the court said: "The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income.   *   *   * We think also that if no such order is made when the receiver is appointed, and it appears in the progress of the cause that bonded interest has been paid, additional equipment provided, or lasting and valuable improvements made, out of earnings which ought in equity to have been employed to keep down debts for labor, supplies, and the like, it is within the power of the court to use the income of the receivership to discharge obligations which, but for the diversion of funds, would have been paid in the ordinary course of business.   *   *   * Thus, it often happens that, in the course of the adminis-

tration of the cause, the court is called upon to take income which would otherwise be applied to the payment of old debts for current expenses, and use it to make permanent improvements on the fixed property, or to buy additional equipment. In this way the value of the mortgaged property is not unfrequently materially increased. It is not to be supposed that any such use of the income will be directed by the court, without giving the parties in interest an opportunity to be heard against it. Generally, as we know both from observation and experience, all such orders are made at the request of the parties or with their consent. Under such circumstances, it is easy to see that there may sometimes be a propriety in paying back to the income from the proceeds of the sale what is thus again diverted from the current debt fund, in order to increase the value of the property sold." And in *Burnham* v. *Bowen, supra,* the same court used the following language: " Such being the case, when a court of chancery, in enforcing the rights of mortgage creditors, takes possession of a mortgaged railroad, and thus deprives the company of the power of receiving any further earnings, it ought to do what the company would have been bound to do if it had remained in possession; that is to say, pay out of what it receives from earnings all the debts which in equity and good conscience, considering the character of the business, are chargeable upon such earnings. In other words, what may properly be termed the debts of the income should be paid from the income before it is applied in any way to the use of the mortgagees. The business of a railroad should be treated by a court of equity under such circumstances as a 'going concern,' not to be embarrassed by any unnecessary interference with the relations of those who are engaged in or affected by it."

The rule appears to be that outstanding debts for labor and other expenses of operating a railroad are not barred in consequence of the lapse of time, when contracted within a reasonable time before the appointment of the receiver. Plaintiff's counsel concedes this, but he contends that the weight of authority established six months as the limit, and that the court erred in preferring the intervener's claim to the plaintiff's, it having been contracted two years and six months before such appointment. While there are decisions indicating six months as the limit, we are of the opinion that no inflexible rule can be laid down for all cases. The liability may have arisen and existed under peculiar circumstances, and unusual impediments may have been interposed and may have stood in the way of its adjustment and payment, excusing delay, and upholding and preserving the creditors' equity. This intervener commenced a suit against the railway company within four months after the services were rendered, but the judgment was not rendered until two years and a half afterwards. It appears that the insufficient defense interposed by this respondent, and the objection made by this plaintiff, and the litigation that arose, prevented the payment of the claim by the receivers out of the money realized from the receivers' certificates. The failure to collect was not the intervener's fault. In view of the nature of plaintiff's claim, of the impediments in the way of its collection, and of all the circumstances connected with it, was the court, in its sound discretion, upon equitable principles, authorized to prefer intervener's debt? The case of *Hale v. Frost*, 99 U. S. 389, was a suit to foreclose four mortgages upon a railroad,—the first executed in May, 1869; the second, September, 1871; the third, January, 1872; and the fourth, July, 1872. The intervener, the Union

Car-Spring Manufacturing Company, furnished the railroad company supplies for its machinery department in August, 1872, and took ·its promissory note, maturing February 13, 1874; and Hale, Ayer & Co., another intervener, also furnished supplies to the machinery department and materials for construction purposes. The trustees of the bondholders, on May 18, 1875, commenced a suit to foreclose all the mortgages, and a receiver was appointed the same day. The court held that the debt due the Union Car-Spring Company, and so much of the debt of Hale, Ayer & Co. as was incurred for supplies to the machinery department, should be preferred to the debt due the bondholders, and paid in full. Both of these debts were incurred before the appointment of the receiver,—that of the Union Car-Spring Company two years and nine months before. There appears to be no six-months rule applicable to all cases, as claimed by plaintiff. While the authorities require that the debt for labor, equipment, or supplies or other necessary expenses in operating the road or preserving its property, must have been incurred within a reasonable time, what will be regarded by the court as a reasonable time in any case must depend upon its special circumstances. *Farmers' Loan & Trust Co.* v. *Kansas City, W. & N. W. R. Co.*, 53 Fed. 182; *Burnham* v. *Brown, supra*; *Wood* v. *Railroad Co*, 70 Fed. 741; *Thomas* v. *Railway Co.*, 36 Fed. 108.

In view of the nature of the intervener's claim, and of the special circumstances of the case as above pointed out, we are of the opinion that the court did not err in directing its payment out of the funds in the hands of the special master, notwithstanding the lapse of time.

A portion of the preferred claim was for labor performed shortly before plaintiff's mortgage was executed, and it is insisted that its allowance was erroneous. The

railroad company continued to operate the road and to receive its earnings after the execution of the mortgage as before, and it was its legal duty to pay its employés from the earnings, whether the labor was performed before or after; and if it did not, but diverted them for the payment of valuable improvements, the court did not err. in ordering the special master, out of the money in his hands, from the earnings or from the sale of the property, not exceeding the amount so diverted, to pay the assignee of the laborers such unpaid wages, since it appears from the record the earnings that came to his hands, with the amount so diverted, were more than sufficient to satisfy the intervener's claim. The portion of the decree appealed from is affirmed.

BARTCH and MINER, JJ., concur.